## CINCINNATI SOAP CO. v. UNITED STATES.

### No. 4995.

District Court, S. D. Ohio, W. D.

Jan. 13, 1938.

Moulinier, Bettman & Hunt, of Cincinnati, Ohio, for plaintiff.

James W. Morris, Asst. Atty. Gen., Andrew D. Sharpe and James E. Murphy, Sp. Assts. to the Atty. Gen., and Francis Canny, U. S. Atty., and Frederic W. Johnson, Asst. U. S. Atty., both of Cincinnati, Ohio, for the United States.

DRUFFEL, District Judge.

Plaintiff, an Ohio corporation engaged in the manufacture of soap, is seeking to recover $6,318.99, with interest from November 22, 1934, being taxes assessed and paid under section 602½ of the Revenue Act of 1934, on the processing of Philippine coconut oil. Section 602½ (a) of the Revenue Act of 1934, c. 277, 48 Stat. 680, 26 U.S.C. § 999(a), 26 U.S.C.A. §

999(a) provides, in part: "There is imposed upon the first domestic processing of coconut oil, * * * a tax of 3 cents per pound, to be paid by the processor. * * * For the purposes of this section the term 'first domestic processing' means the first use in the United States, in the manufacture or production of an 'article intended for sale, of the article with respect to which the tax is imposed." 

The effective date of the act was May 10, 1934. On that day plaintiff had on hand 208,067 pounds of refined coconut oil; said coconut oil having been purchased prior to May 10, 1934, by plaintiff in its refined state from a refiner who had processed the same in the United States prior to May 10, 1934. During August, 1934, plaintiff used said 208,067 pounds of coconut oil in its manufacture of soap, which soap was intended for sale by it. Conforming to Regulations issued by the Commissioner of Internal Revenue, plaintiff notified the Collector of Internal Revenue at Cincinnati of the use of said oil, and at the same time advised him of the fact that said oil had been processed in the United States previous to May 10, 1934. Thereafter the Commissioner of Internal Revenue; acting under section 602½, assessed plaintiff $6,318.99, which sum was paid by plaintiff under protest. Plaintiff promptly filed its claim with the Collector for refund, which claim was thereafter rejected and disallowed by the Commissioner of Internal Revenue. Thereupon plaintiff filed its petition, to which the defendant filed a demurrer, setting out two grounds, to wit: (1) That said complaint fails to state facts sufficient to constitute a cause of action; and (2) that the allegations of the complaint show that the taxes sought to be recovered were lawfully and correctly assessed and collected.

■ Plaintiff contends, among other things, that the use by it of said refined and processed coconut oil in the manufacture of soap after May 10, 1934, was not a taxable processing within the language or meaning of section 602½; that said Regulations 48, particularly paragraph (2) of article I, " 'first domestic processing' means the first use in the United States on or after the effective date of the Act," seeks to give the expression "first domestic processing" an interpretation which would include said use, the effect of which is to impose a retroactive tax upon the purchase of coconut oil which received its first domestic processing prior to May 10, 1934, the effective date of the act; or permit of the imposition of the tax on an actual additional domestic processing after May 10, 1934, where the actual first domestic processing occurred prior to May 10, 1934.

The defendant contends that the statute should, and was intended to, apply to the first domestic processing occurring after the effective date of the taxing statute, and that no other construction or application is reasonable, valid, or in accord with the congressional purpose and intent; that since the issuance of the applicable regulations, Congress has twice enacted legislation directly relating to this tax without any indication of disapproval of the Treasury interpretation and application of the tax to the first domestic processing occurring after the date of the 1934 Revenue Act; that it is an elemental rule of statutory construction that laws should be construed wherever possible so as to apply to acts or events occurring after their enactment.

Counsel for the parties have been very generous in the citation of authorities, including two recent contrary opinions by District Courts construing section 602½ and the Regulations promulgated thereunder. One is by Campbell, J., D.C.E.D. N.Y., in the case of Loose-Wiles Biscuit Co. v. Rasquin, 20 F.Supp. 805, 808, decided August 26, 1937. The gist of the finding follows:

"Plaintiff * * * contends that the statute is plain and explicit, * * * and that the Commissioner in his regulations, contrary to the statute, added to, or varied the statute when, in definitions, the regulations provided the term 'processing or first domestic processing will be deemed synonymous with use or first use in the United States on or after the effective date.' It does seem to me that the language of the statute is plain and explicit, as it was defined by the Commissioner in the regulations, and I cannot agree with plaintiff that it is plain and explicit in relieving from taxation oil which had been processed in some degree within the United States prior to the effective date of the act. * * *

"It seems plain to me that the intent of Congress clearly was to make the tax effective to the first domestic processing after May 10, 1934, the effective date of the law, and, therefore, the tax was properly collected in the case at bar."

The other decision is by Barnes, J., D. C., N.D.Ill.E.D., in the case of Armour & Co. of Delaware v. Carter H. Harrison, Collector, decided July 14, 1937,[1] in which Judge Barnes finds as a matter of law, so far as the issues parallel this case:

"1. Under section 602½ of the Revenue Act of 1934 [26 U.S.C.A. § 999], the taxable transaction is 'the first domestic processing' of any of the designated oils or combinations or mixtures. By statutory definition, such taxable transaction is the first use in the United States of any of such oils or combinations or mixtures in the manufacture or production of any article intended for sale and is not the manufacture or production of the article intended for sale, including each and every step in such manufacture or production, as distinguished from the first use of the oil or combination or mixture in such manufacture or production.

"2. The first domestic processing, that is, the first use in the United States in the manufacture of any article intended for sale, or any of the designated oils or combinations or mixtures is the taxable transaction, the only taxable transaction; and where such first domestic processing, has been done, whether before or after May 10, 1934, no act done thereafter to the oil or combination or mixture is 'the first domestic processing', the taxable transaction.

"3. Refining or saponification of any of the designated oils is a processing or use thereof and, if the refining or saponification is the first processing or use of the oil in the United States and occurs in the course of the manufacture or production of any article intended for sale, it is 'the first domestic processing', which is prescribed as the taxable transaction."

Passing these cases for the moment without comment, it appears to this court that a careful analysis of section 602½ and the Regulations promulgated thereunder suggest elemental tests which definitely control and must determine the ultimate answer. The pertinent part of section 602½ and Regulations 48 follow:

Section 602½, 26 U.S.C.A. § 999. "There is hereby imposed upon the first domestic processing of coconut oil * * * a tax of 3 cents per pound to be paid by the processor. * * * For the purposes of this section the term 'first domestic proc-

essing' means the first use in the United States, in the manufacture or production of an article intended for sale, of the article with respect to which the tax is imposed, * * * or of any * * * quantity of coconut oil with respect to which oil there has been no previous first domestic processing."

Reg. 48. "(1) First domestic processing means the first use in the United States on or after the effective date of the Act. * * *"

"Art. 3. Imposition of the tax.—The tax is imposed only on the first domestic processing on or after the effective date of the Act."

At the outset it will be noted that the first domestic processing of coconut oil is the taxable transaction. Then it will be noted that in imposing the tax on a combination or mixture of said oils, that the Congress to make it definite and certain that the first domestic processing was the taxable transaction, used the language: "With respect to which oils there has been no previous first domestic processing." And, finally, it will be noted that the Congress furnished and adopted its own definition of "first domestic processing," as follows: "For the purposes of this section the term 'first domestic processing' means the first use in the United States, in the manufacture or production of an article intended for sale, of the article with respect to which the tax is imposed. * * *"

Interpreting literally the language of the congressional definition of the taxable transaction, the assessment in the instant case is invalid; the oil having received its first domestic processing prior to May 10, 1934, but giving approval to the Commissioner's regulations, it has actual effect of taxing an additional domestic processing which Congress clearly did not intend when it used the language, "with respect to any of which oils there has been no previous first domestic processing."

This language appears to be so plain, clear, and unambiguous as to require no further interpretation, but even if it were open to some question, this court feels bound by the unanimous decision of the Supreme Court in Gould v. Gould, 245 U. S. 151, at page 153, 38 S.Ct. 53, 62 L.Ed. 211, where it was held: "In the interpretation of statutes levying taxes it is the established rule not to extend their pro-

visions, by implication, beyond the clear import of the language used, or to enlarge their operations so as to embrace matters not specifically pointed out. In case of doubt they are construed most strongly against the government, and in favor of the citizen."

If the clear and plain language of section 602½ standing alone would not bring the taxable transaction in the instant case within the provisions of the act, certainly, where the Commissioner's Regulations have the actual effect of so doing, said regulations to that extent cannot be sustained. While section 1101, Revenue Act of 1926, 26 U.S.C.A. § 1350, authorizes the Commissioner to prescribe and publish all needful rules and regulations for the enforcement of the act, it does not and could not give him power to rewrite the law or to add to or take from the act, or subject to or relieve taxable transactions not intended by the Congress.

A parallel case in support of the foregoing and one which this court holds to be ruling the decision here, is that of Miller, Collector, etc., v. Standard Nut Margarine Co., 284 U.S. 498, 52 S.Ct. 260, 76 L.Ed. 422. In that case Congress designated what would be taxed as oleomargarine, among other substances, "vegetable-oil annotto." Later, the Commissioner promulgated regulations in which the hyphen in the phrase "vegetable oil" was eliminated and a comma was inserted between these words and "annotto." At page 608 of 284 U.S., 52 S.Ct. 260, 262, 76 L.Ed. 422, the Supreme Court, speaking through Mr. Justice Butler, say: "Regulations promulgated under the act omit the hyphen and add a comma thus making the phrase to read 'vegetable oil, annotto.' The Commissioner's determination that respondent's product is oleomargarine necessarily was based on that version. It is elementary that tax laws are to be interpreted liberally in favor of taxpayers, and that words defining things to be taxed may not be extended beyond their clear import. Doubts must be resolved against the government and in favor of taxpayers."

Since the court feels this point must determine its decision, it is unnecessary to pass on the other points raised by plaintiff and defendant's briefs.

By reason of the foregoing, this court is obliged to overrule defendant's demurrer, and in so doing adopts the conclusions of law of Judge Barnes in the Armour Case, supra.