## TASTY BAKING CO. v. UNITED STATES.

No. 43725.

Court of Claims.

May 5, 1941.

Hugh Satterlee, of Washington, D. C. (Alfred S. Weill, Thorp Nesbit, and Stephen T. Dean, all of Philadelphia, Pa., and Weill, Satterlee, Green & Morris, of Washington, D. C., on the brief), for plaintiff.

Hubert L. Will, of Washington, D. C., and Samuel O. Clark, Jr., Asst. Atty. Gen. (Robert N. Anderson and Fred K. Dyar, both of Washington, D. C., on the brief), for defendant.

Before WHALEY, Chief Justice, and LITTLETON, WHITAKER, JONES, and MADDEN, Judges.

JONES, Judge.

Plaintiff, a Pennsylvania corporation engaged in the manufacture and sale of bakery products, seeks to recover the sum of $18,309.76 in taxes which were assessed and paid under Section 602½ of the Revenue Act of 1934, 48 Stat. 680, 763, 26 U.S.C.A. Int.Rev.Acts, page 778, on the domestic processing of coconut oil produced in the Philippine Islands.

The oil which is involved in this claim was owned by the plaintiff on May 10, 1934. It had been previously processed in the United States by the vendor from whom plaintiff purchased it, and it was then held in the plaintiff's stocks for the purposes indicated. The Internal Revenue Act in question was approved May 10, 1934. Section 602½ of such act provides in part as follows: "There is hereby imposed upon the first domestic processing of coconut oil, sesame oil, palm oil, palm kernel oil, or sunflower oil, or of any combination or mixture containing a substantial quantity of any one or more of such oils with respect to any of which oils there has been no previous first domestic processing, a tax of 3 cents per pound, to be paid by the processor."

The same paragraph defines the term "first domestic processing" as follows: "For the purposes of this section the term 'first domestic processing' means the first use in the United States, in the manufacture or production of an article intended for sale, of the article with respect to which the tax is imposed, but does not include the use of palm oil in the manufacture of tin plate."

The question at issue is whether the stocks of plaintiff on hand at the time such revenue act was passed and which had been processed theretofore by plaintiff's vendor, were subject to the tax in question.

The plaintiff contends that they were not subject to the tax. The Collector of Internal Revenue ruled that they were subject to the tax. The taxes were accordingly collected, and this suit is to recover the amount of the taxes thus paid, and which plaintiff claims were illegally collected.

The case turns on whether the term "first domestic processing" as used in the act refers to the first domestic processing in fact, or to the first domestic processing after the passage of the act.

If this issue were before us as a matter of first impression we would have doubt whether the Congress intended to tax oils in stocks that had previously been processed in the United States.

The part of the section first quoted, standing alone, would indicate that the Congress meant the first domestic processing after the passage of the act. The definition quoted from the last part of the same section, if standing alone, would naturally mean the first processing in point of time. As they must be construed together, the intention of the Congress is not altogether clear, especially in the light of the Treasury Regulations and the subsequent implied approval of the Congress.

The various courts are not in agreement on the interpretation which should be given the language in question. The cases of Armour & Co. v. Harrison, D.C.N.D.Ill., 19 A.F.T.R 1347, appeal dismissed 7 Cir., 95 F.2d 993, and Cincinnati Soap Co. v. United States, D.C.Ohio, 1938, 22 F.Supp. 141, hold that coconut oil stocks on hand and domestically processed before the passage of the Revenue Act of 1934 were not taxable. The cases of Loose-Wiles Biscuit Co. v. Rasquin, Collector, D.C.E.D. New York, 20 F.Supp. 805; Id., 2 Cir., 95 F.2d 438, certiorari denied 305 U.S. 611, 59 S.Ct. 70, 83 L.Ed. 389, and Colgate Palmolive Co. v. United States, D.C.Del., 37 F.Supp. 794, hold that such stocks were taxable.

Once conceding that the meaning of the language used in the act is in doubt, it becomes necessary to consider the regulations of the Treasury and subsequent acts of Congress as well as other matters that may throw light on a proper interpretation of the language of the act.

Following the enactment of the Revenue Act of 1934, Treasury Regulation 48 was issued, reading in part as follows: "(1) First domestic processing means the first use in the United States on or after the effective date of the Act."

On two different occasions after the issuance of the regulation referred to, Congress enacted subsequent legislation directly relating to this tax without disapproving the Treasury interpretation and application of the tax to the first domestic processing occurring after the effective date of the Revenue Act of 1934.

The facts in the case of Loose-Wiles Biscuit Company v. Rasquin, supra, were very similar to the facts in the case at bar. Both involved coconut oil produced from materials grown in the Philippine Islands. Plaintiff in each case had purchased the

commodity from a seller who prior to May 10, 1934, had put it through a refining process of such a nature as to make it suitable for use as shortening in the manufacture of bakery products.

In a well-reasoned opinion in the Loose-Wiles case [95 F.2d 440], the Circuit Court of Appeals for the Second Circuit, while admitting that "apart from the regulations * * * the language of the statute does leave it doubtful whether Congress intended to tax a processing of the oils" which had been previously processed within the United States, at the same time found that there was a sufficient basis for holding "that the Treasury regulations promulgated under the statute were a reasonable construction of the statutory language." It therefore held that the tax was collectible.

The Supreme Court denied the application for a writ of certiorari.

While the Supreme Court has stated that denial of a writ of certiorari adds no authority to the opinion sought to be reviewed, we feel that denial of the writ in Loose-Wiles Biscuit Co. v. Rasquin, supra, is a factor of some persuasive value in determination of the instant question. The court is aware of the limited purposes for which writs of certiorari are granted by the Supreme Court, and the restricted significance of denials thereof. Hamilton-Brown Shoe Co. v. Wolf Bros. & Co., 240 U.S. 251, 36 S.Ct. 269, 60 L.Ed. 629; United States v. Carver, 260 U.S. 482, 43 S.Ct. 181, 67 L.Ed. 361; Atlantic Coast Line R. Co. v. Powe, 283 U.S. 401, 51 S.Ct. 498, 75 L.Ed. 1142; Stamey v. United States, D.C., 37 F.2d 188; Rule 38, paragraph 5, Rules of the Supreme Court of the United States, 28 U.S.C.A. following section 354. However, it feels it worthwhile to indicate that the Hamilton-Brown Shoe Company case, wherein the Supreme Court apparently first had occasion to note the restricted significance of denials, involved refusal to review an interlocutory decree and that the court expressly recognized the nonfinality of the lower court's decree as a sufficient ground

alone for refusing the writ. The Carver and Powe cases, supra—the other reported opinions in which the Supreme Court has spoken directly upon this subject—merely repeat the general proposition that denial of the writ imports no expression of opinion upon the merits of the case.

The question involved in the petition for certiorari to the Supreme Court in the Loose-Wiles case, supra, was upon a final judgment of the lower court, was narrowly defined and was identical with that now before us. In these circumstances, we feel it proper not only to give thoughtful consideration to denial of the writ in that case, but to regard it as of some persuasive value in determination of the question here involved. See United States v. Musselshell State Bank of Musselshell, Mont., et al., D.C., 60 F.2d 157, 159; Hornell Ice & Cold Storage Co. v. United States, D.C., 32 F.Supp. 468, 471.

The fact that the decisions of the various district courts are in conflict, the fact that the Treasury Regulation provided for the collection of the tax in question, the fact that on two different occasions the Congress reenacted revenue provisions referring to this matter without questioning the accuracy of the Treasury Regulation, the decision of the Circuit Court of Appeals for the Second Circuit and the denial of the application for a writ of certiorari, and the fact that the collection of the tax places no undue burden on those who had previously purchased stocks of coconut oil, but leaves them on the same level with their competitors who had not purchased such stocks, taken together, leave us no choice but to follow the interpretation laid down in the Loose-Wiles decision.

It follows, therefore, that the plaintiff's petition must be dismissed, and it is so ordered.

WHALEY, Chief Justice, and WHITAKER, and MADDEN, Judges, concur.

LITTLETON, Judge, dissents.