## COLGATE-PALMOLIVE-PEET CO. *v.* UNITED STATES.

Nos. 38 and 39. Argued November 8, 1943.—Decided December 13, 1943.

*Mr. Mason Trowbridge,* with whom *Messrs. E. Ennalls Berl, Albert C. Wall, Blevins C. Dunklin,* and *Edward J. O'Mara* were on the brief, for petitioner.

*Mr. Alvin J. Rockwell,* with whom *Solicitor General Fahy, Assistant Attorney General Samuel O. Clark, Jr.,* and *Mr. Sewall Key* were on the brief, for the United States.

MR. JUSTICE REED delivered the opinion of the Court.

These two writs of certiorari were granted to review a judgment of the Circuit Court of Appeals for the Third Circuit denying recovery to the petitioner of taxes paid to the United States aggregating $2,532,643.16. The issues in the two cases are identical. Each case covers a separate period of time.

The suits were brought in the United States District of Delaware under Judicial Code § 24 (20). Recovery was there also denied. We granted certiorari because of a conflict of decisions. 319 U. S. 778. See *Harrison* v. *Durkee Famous Foods,* 136 F. 2d 303; *Loose-Wiles Biscuit Co.* v. *Rasquin,* 95 F. 2d 438; *Tasty Baking Co.* v. *United States,* 38 F. Supp. 844; *Cincinnati Soap Co.* v. *United States,* 22 F. Supp. 141.

The issue is narrow and may be simply stated. In the Revenue Act of 1934, § 602½, 48 Stat. 763, an excise tax was levied on the "first domestic processing" of certain foreign oils—coconut, sesame, palm, et cetera.[1] When the

---

[1] 48 Stat. 763, § 602½. Processing Tax on Certain Oils.

"(a) There is hereby imposed upon the first domestic processing of coconut oil, sesame oil, palm oil, palm kernel oil, or sunflower oil, or of any combination or mixture containing a substantial quantity of any one or more of such oils with respect to any of which oils there has been no previous first domestic processing, a tax of 3 cents per pound, to be paid by the processor. . . . For the purposes of this section the term 'first domestic processing' means the first use in the United States,

Act was approved on May 10, 1934, this petitioner had on hand large quantities of these oils which had gone through one or more domestic processings. After the effective date, all of this oil was subjected to further processing upon which petitioner paid a tax, recovery of which is here sought. The taxpayer urges that the taxable event fixed by the statute is the first domestic processing, without regard to when it occurs. The phrase is defined by the statute as "the first use in the United States . . . of the article" taxed. Since the effective date of the Act is May 10, 1934, the taxpayer concludes that if the first use in this country occurs after that date, it is a taxable event, and if it occurs before May 10, 1934, it is not a taxable event. The Government reads the Act differently. To it, the Act imposes a tax on the first domestic processing after the effective date of the Act, regardless of the prior domestic processing. The litigants agree that the section is not retroactive. The facts are not in dispute.

The section in question does not make clear whether the "first domestic processing" is the first which takes place in this country or the first after the passage of the Act. The definition in § 602½ does not aid the interpretation. "First use" may be first after importation or first after the Act. The likelihood that tax statutes look to the future and not the past indicates that processings after the effective date were meant to be taxed. Cf. *Hassett* v. *Welch*, 303 U. S. 303; *Shwab* v. *Doyle*, 258 U. S. 529. This likelihood does not depend upon any taxation of a past event but upon the reasonable probability that Congress would wish to tax future processings. The insertion of the qualifying adjective "first" was probably due to a desire to avoid accumulative taxes on suc-

---

in the manufacture or production of an article intended for sale, of the article with respect to which the tax is imposed, but does not include the use of palm oil in the manufacture of tin plate."

cessive processings. Treas. Reg. 48, Art. 1, as amended by T. D. 4695.

An examination of the general Congressional purposes intended to be served by the Act will further aid in the resolution of this dispute. This tax has been held by this Court to be a valid exercise of the taxing power. *Cincinnati Soap Co.* v. *United States,* 301 U. S. 308, 312. But the legislative history cannot be read without reaching a conviction that the advantages which would result to American vegetable oil producers from the heavy tax on oils not produced in the continental United States played a leading part in promoting the legislation.[2] *Id.,* 320. The tax yielded substantial revenues, which were remitted to the Philippine Government, since the Philippines were the source of many of the products taxed.

A desire for equality among taxpayers is to be attributed to Congress, rather than the reverse. Yet the omission by Congress of a tax upon the first processing which followed the enactment of the Act would give users of the oils who had treated them prior to the Act a definite advantage over their competitors who had not done so. The advantage would be slight if Congress had supposed the tax would finally be borne by the consumer rather than by the manufacturer, but here the purpose was to restrict the domestic market for imported oils, and Congress probably would not intend that manufacturers should find a market for the foreign oil at a price enhanced by the full amount of the tax. Again, if petitioner's argument is sound, the Congressional purpose to create an advantage for domestic oil producers would be frustrated to the extent that tax-free foreign oils on hand could continue to compete with the domestic product. A major purpose of the legislation would be temporarily defeated in part by freeing from the tax oil which had received one domestic processing.

---

[2] 78 Cong. Rec. 2785, 2793, 2930, 3007, 6311–16, 6380–95, 7246, 7976.

The Treasury promptly interpreted the Act to apply to all first processings after its effective date. Treas. Reg. 48, Art. 1 (1), August 17, 1934. This action of the Treasury, with its wide experience in tax matters, has weight in our conclusion, notwithstanding the prompt challenge of the taxpayer and others similarly situated. *United States* v. *American Trucking Assns.*, 310 U. S. 534, 549.

In reaching the conclusion that the "first domestic processing" is the first after the passage of the Act, we do not disregard some circumstances vigorously pressed upon us by petitioner which give color to the opposite interpretation. The taxpayer points to the fact that the phrase "first domestic processing" was used earlier in § 9 (a) of the Agricultural Adjustment Act of May 12, 1933, 48 Stat. 31, 35, which levied a similar processing tax upon the first domestic processing of the basic agricultural commodities—wheat, cotton, corn, hogs, rice, tobacco and milk— and that, at the time this tax was placed on foreign oils, a regulation of the Commissioner of Internal Revenue was in effect which interpreted the phrase as being the first domestic processing whenever it occurred and therefore as relieving a processor of the tax when the first domestic processing took place prior to the effective date of the A. A. A. Treas. Reg. 81, as amended, T. D. 4403, November 2, 1933.

The answer to this argument arises from the difference between the two Acts as to the taxation of floor stocks. Under the A. A. A. commodities which had undergone their first domestic processing prior to the passage of the Act bore a corresponding floor stock tax. 48 Stat. 40, § 16. A subsequent processing tax would have created double taxation and an inequality among taxpayers which the compensating floor stock tax had obviated. The exemption of subsequent domestic processing by the Treasury Regulations was thus compelled by the Act itself. Cf. Treas. Reg. 82, Floor Stocks under the A. A. A. No such provision

appears in the Revenue Act of 1934 or any later legislation supplementing § 602½. Phrases without definite legal connotation which are alike take their meaning from their context. The "first domestic processing" of the A. A. A. naturally refers to the first in point of time to avoid double taxation, while the same words in this Act just as naturally refer to the first after the Act to avoid inequalities. Double taxation does not arise from the later Act.

For a further point, petitioner calls attention to the action of Congress in amending § 602½ in the Revenue Act of 1936, 49 Stat. 1742, by adding fatty acids and salts derived from the taxed oils with the proviso that the tax should not apply: ·

"(*1*) with respect to any fatty acid or salt resulting from *a previous first domestic processing taxed under this section* or upon which an import tax has been paid under section 601 (c) (8) of the Revenue Act of 1932, as amended, or (*2*) with respect to any combination or mixture by reason of its containing an oil, fatty acid, or salt with respect to which there has been *a previous first domestic processing* or upon which an import tax has been paid under such section 601 (c) (8)."

This amendment came from the Conference Committee without comment. H. Rep. No. 3068, 74th Cong., 2d Sess., p. 17. Its origin was in the Senate. The purpose of the exemption was said to be "to avoid double taxation." S. Rep. No. 2156, 74th Cong., 2d Sess., Title V. Petitioner's contention is that "the Conference Committee wrote into the amendment two different clauses, one of them . . . creating an exemption of mixtures and combinations conditioned upon a 'previous first domestic processing' and the other creating an exemption of fatty acids and salts conditioned upon their 'resulting from a previous first domestic processing *taxed under this section.*'" Therefore, Congress is said by peti-

tioner to have recognized two classes of first domestic processings; one taxed under the section, the other not taxed. In the absence of some expression of such intention, however, beyond the words quoted, we are not convinced that the difference in language was meant to evidence a difference in meaning. Cf. *Haggar Co.* v. *Helvering*, 308 U. S. 389, 400. The careful provision requiring payments of applicable import taxes under all conditions tends to the contrary conclusion. We think the purpose of the 1936 amendment was to add new taxable articles and to make plain the purpose to free them from double taxation. If the articles are not exempt from the 3 cent excise because of foreign processing, we see no reason to exempt them because of domestic processing prior to the Act.

Finally we consider petitioner's argument that House Report (Conference) No. 1385, 73d Cong., 2d Sess., p. 30, manifests the intention of Congress to tax only the "first domestic processing" which occurs after the Act when there has been no previous domestic processing prior to the Act. This report deals with the Revenue Act of 1934. The Senate amended the section of the House bill which taxed foreign oils by the addition of other foreign vegetable oils and marine oils. The Conference accepted the amendment in regard to the marine oils but changed "the point of imposition of the tax in the case of imported whale oil, imported fish oil, and imported marine animal oil to the importation instead of the first domestic processing." These were all the marine oils in the Senate amendment.

By the Conference amendment these marine oils were placed in an entirely different section, 602, of the Revenue Act of 1934. It amended 601 (c), Revenue Act of 1932, which imposed an excise tax on the domestic producer or the importer of lubricating oils, grain extracts, petroleum,

coal, lumber, et cetera, by adding these marine oils to the taxable articles.[3] Regulations treated marine oils upon the same basis as the other taxed imports in the section.[4] Consequently marine oils imported prior to the Revenue Act of 1934 escaped taxation when eventually processed. This inequality of treatment, under the Government theory, between importations of vegetable oils and importations of marine oils indicates, says the petitioner, that the Government is wrong and Congress intended to tax processing only when a prior domestic processing either before or after the Act had not occurred. The Conference change, says petitioner, "was merely a shift of the tax on these particular oils from the first processing after the entry (the point of imposition under Section 602½) to the entry itself." But though Congress may have been willing to defer protection of American producers from marine oils, it nowhere indicated that handlers of other oils already processed should obtain a trade advantage through exemption.

We are confronted with an ambiguity of phrase which yields to the intent of Congress as disclosed by the legislative history. In such circumstances, we follow the general

---

[3] 48 Stat. 762, § 602. Tax on Certain Oils.

"Section 601 (c) of the Revenue Act of 1932 is amended by adding at the end thereof a new paragraph as follows:

" '(8) Whale oil (except sperm oil), fish oil (except cod oil, cod-liver oil, and halibut-liver oil), marine animal oil, and any combination or mixture containing a substantial quantity of any one or more of such oils, 3 cents per pound. The tax on the articles described in this paragraph shall apply only with respect to the importation of such articles after the date of the enactment of the Revenue Act of 1934, and shall not be subject to the provisions of subsection (b) (4) of this section (prohibiting drawback) or section 629 (relating to expiration of taxes).' "

[4] Treasury Department Bureau of Customs Circular Letter, No. 1202, May 11, 1934; T. D. 45751; T. D. 47448.

purpose of the Act to promote the interests of domestic oil producers through an excise tax.

*Affirmed.*

MR. JUSTICE ROBERTS and MR. JUSTICE JACKSON took no part in the consideration or decision of this case.