## O. C. WILEY & SONS, Inc. v. UNITED STATES et al.

### Civ. No. 198.

United States District Court
W. D. Virginia, Lynchburg Division.

Argued Aug. 30, 1949.

Decided Sept. 3, 1949.

Barksdale, District Judge, dissenting.

W. G. Burnette, Lynchburg, Va., for plaintiff.

Herbert A. Bergson, Assistant Attorney General, William D. McFarlane, Special Assistant to Attorney General, James E. Kilday, Special Assistant to Attorney General, Edward Dumbauld, Special Assistant to Attorney General, and Howard C. Gilmer, Jr., United States Attorney, Roanoke, Va., for United States.

D. W. Knowlton and Samuel R. Howell, Washington, D. C., for the Interstate Commerce Commission.

Before DOBIE, Circuit Judge, PAUL, Chief Judge, and BARKSDALE, District Judge.

DOBIE, Circuit Judge.

Stuart Lumber Corporation (hereinafter called Stuart) entered into a contract with O. C. Wiley & Sons, Incorporated, (hereinafter called Wiley) under which, for a consideration of $1,000, Stuart agreed to transfer to Wiley certain operating rights which Stuart, as a motor carrier, had under a certificate of the Interstate Commerce Commission (hereinafter called the Commission). Later, in spite of this contract, Stuart, apparently for a larger consideration than that specified in the Stuart-Wiley contract, agreed to transfer these same operating rights to John C. Fleming, Jr., (hereinafter called Fleming).

Upon an application filed with the Commission by Stuart and Fleming, the Commission (Docket MC—3774, John C. Fleming, Jr.—Purchase—Stuart Lumber Corporation) entered an order on June 18, 1948, permitting Stuart to sell and Fleming to buy these operating rights hitherto possessed by Stuart. Before the entry of this order, Wiley had (in writing to the Commission) protested its issuance on the ground of its contract with Stuart, which was prior to Stuart's contract with Fleming. The Commission, however, delayed final and definitive action until Wiley could establish, in a court of the State of Virginia, such rights, if any, that he might have against Stuart in the premises. Final action was also delayed by the Commission in order that our Court might pass on the instant civil action, instituted in the District Court of the United States for the Western District of Virginia, asking us to annul, set aside or suspend the order of the Commission authorizing the transfer by Stuart of its operating rights to Fleming.

Wiley, accordingly, filed a suit in the Circuit Court of the City of Lynchburg, Virginia, against Stuart asking for specific performance by Stuart of its contract to transfer to Wiley the operating rights of Stuart. Under the utterly antiquated and absolutely outworn practice in the state courts of Virginia (to which Virginia lawyers so dearly and so lovingly cling), there is a clear separation of law and equity. The Virginia court held that it could not decree specific performance here and transferred the case to the law side of the court. It there proceeded as an action at law for damages arising from a breach of contract. And, in accordance with a verdict of the jury, which fixed these damages at $300, a money judgment for that amount was entered by the Virginia court in favor of Wiley and against Stuart.

We append certain apposite provisions of the Federal Interstate Commerce Act, 49 U.S.C.A. § 1 et seq.

Section 5(2) reads (in part) as follows:

"(2) (a) It shall be lawful, with the approval and authorization of the Commission, as provided in subdivision (b)—

"(i) * * * for any carrier, or two or more carriers jointly, *to purchase,* lease, or contract to operate the properties, or any part thereof, of another; * * *

"(b) Whenever a transaction is proposed under subparagraph (a), *the carrier or carriers or person seeking authority therefor shall present an application to the Commission,* and thereupon the Commission * * * shall afford reasonable opportunity for interested parties to be heard. If the Commission shall consider it necessary in order to determine whether the finding specified below may properly be made, it shall set said application for public hearing, and a public hearing shall be held in all cases where carriers by railroad are involved. *If the Commission finds that, subject to such terms and conditions and such modifications as it shall find to be just and reasonable, the proposed transaction is within the scope of subparagraph (a) and will be consistent with the public interest, it shall enter an order approving and authorizing such transaction, upon the terms and conditions, and with the modifications, so found to be just and reasonable."* (Italics supplied.)

Section 5(4) provides: "It shall be unlawful for any person, except as provided in paragraph (2), to enter into any transaction within the scope of subparagraph (a) * * *."

Section 5(11) provides: "The authority conferred by this section shall be exclusive and plenary, * * *."

Wiley contends that the Commission should not have entered the order in question approving the transfer by Stuart of its operating rights to Fleming until a determination of the rights, if any, of Wiley under the contract between Wiley and Stuart. The Commission has repeatedly held that its orders approving such transfers are permissive only, that the Commission is not a court and must leave to the courts the determination of such alleged conflicting rights between the parties, and that the

Commission will not, upon the mere assertion of an adverse claim, hold up indefinitely its decision on such applications—a procedure which would, in many cases, result in almost an interminable delay. See, Raymond Bros. Motor Transportation, Inc.—Purchase—Borzel, 15 M.C.C. 477; Harris Bros. Transfer Co.,—Purchase—Glosson—Hancock, 25 M.C.C. 645; Marion Trucking Co.—Purchase—Harwood Trucking, 45 M. C.C. 377.

■ The great weight to be attributed to the Commission's interpretation of Section 5(2) of the Interstate Commerce Act has frequently been attested by the Supreme Court. See, United States v. American Trucking Associations, 310 U.S. 534, 549, 60 S.Ct. 1059, 84 L.Ed. 1345; Colgate-Palmolive-Peet Co. **v.** United States, 320 U.S. 422, 426, 64 S.Ct. 227, 88 L.Ed. 143; United States v. Jackson, 280 U.S. 183, 193, 50 S.Ct. 143, 74 L.Ed. 361; New York Central Securities Corp. v. United States, 287 U.S. 12, 27, 53 S.Ct. 45, 77 L. Ed. 138; McLean Trucking Co. **v.** United States, 321 U.S. 67, 87–89, 64 S.Ct. 370, 88 L.Ed. 544.

Wiley strongly contends that the Commission should not, and could not, approve the transfer by Stuart to Fleming of the Stuart operating rights because, at the time of this transfer, these rights were owned by Wiley and not by Stuart. There are two obvious answers to this contention. The Stuart-Wiley contract in terms was not even an attempted executed transfer of the Stuart rights to Wiley; it was, at best, no more than an executory contract providing that Stuart would transfer (which it never did) these rights to Wiley in the future. And no transfer by Stuart to Wiley of these rights could be effective (under the provisions of the Interstate Commerce Act cited above) without the permission of the Commission.

■ It is not for us to speculate on the correctness (or lack of it) of the decision of the Virginia court in the suit brought therein by Wiley against Stuart. For our purposes, that decision is res adjudicata in its determination that Wiley was not entitled to specific performance by Stuart of

the Stuart-Wiley contract. And, when Wiley permitted this case to proceed as an action at law, resulting in a mere judgment for money damages for a breach of this contract by Stuart, without any appeal by Wiley, all of Wiley's rights under this contract became merged in the judgment. It is thus at least open to serious question whether our setting aside of the Commission's order that is before us would in any way be helpful to Wiley.

It must be remembered that Wiley filed no application with the Commission as required by Section 5(2) (b) of the Interstate Commerce Act, and made no allegations either before the Commission or in this Court that the action of the Commission in approving the transfer: (1) was not in the public interest; (2) was not within the scope of Section 5(2); and (3) the terms and conditions of the purchase were unjust and unreasonable as between the parties. It has been often recognized that Section 5 confers broader authority and greater administrative discretion than most any other section of the Act and that the legislative history of the recent amendments to this section of the Act show congressional intent to broaden the authority of the Commission. We are, accordingly, of the opinion that the Commission's report and order, approving the transfer upon terms and conditions found to be just and reasonable and consistent with the public interest, should not be set aside.

The primary concern of the Commission here is the protection of the public interest. It has been repeatedly held that a very strong showing must be made (and here there is no such showing) by one who seeks to set aside an order of the Commission in this field. See, McLean Trucking Co. v. United States, 321 U.S. 67, 87–89, 64 S.Ct. 370, 88 L.Ed. 544; State of Texas v. United States, 292 U.S. 522, 531, 54 S.Ct. 819, 78 L.Ed. 1402; Interstate Commerce Commission v. Union Pacific R. Co., 222 U.S. 541, 547–549, 32 S.Ct. 108, 56 L.Ed. 308; Alton Railroad Co. v. United States, 315 U.S. 15, 23, 62 S.Ct. 432, 86 L.Ed. 586; Virginia Stage Lines v. United States, D.C., 48 F.Supp. 79; General Transportation Co. v. United States, D.C, 65 F.Supp.

981, affirmed 329 U.S. 668, 67 S.Ct. 75, 91 L.Ed. 590.

Wiley complains further that the Commission refused to hold a public hearing and denied Wiley's request for a further consideration or rehearing in this case. These are matters primarily vested in the sound discretion of the Commission. And no adequate showing has here been made that would justify us in interfering with the exercise by the Commission of this discretion in these matters.

For the reasons above set out in this opinion, we must decline to set aside, annul or suspend the instant order of the Commission, and the civil action of the plaintiff herein must be dismissed.

Dismissed.

PAUL, Chief Judge, concurs in the foregoing opinion.

BARKSDALE, District Judge, dissents.