**IN THE MATTER OF THE ADOPTION**
**OF**
**PATRICIA MERCEDES WILLIAMS**

Family No. 289-77

Territorial Court of the Virgin Islands

Div. of St. Croix

September 29, 1977

G. LUZ A. JAMES, ESQ., Christiansted, St. Croix, *for petitioner*

SILVERLIGHT, *Judge*

### MEMORANDUM OPINION AND ORDER

This case presents a petition for the adoption of an

adult,[1] an action which is not directly dealt with by the provisions of Chapter 5, Title 16 of the Virgin Islands Code.

Because of the lack of case law emanating from this jurisdiction which defines the scope of our adoption law insofar as adults are concerned, this Court has undertaken to write the following analysis of the law.

It has been urged by Petitioner that the former Municipal Court resolved the question of authority for adult adoptions by having granted same in the past. To support this contention, counsel has cited In Re Adoption of Coralie Simon, Municipal Court, Division of St. Croix, Docket No. JDR 301/71 as a precedent. This case, however, is inapposite because, upon a reading of the file, one finds that the action was instituted on August 17, 1971, at which time Coralie Simon was 20 years of age; that final judgment was entered on December 14, 1971; that the prospective adoptee was born on February 7, 1951, and did not attain age 21 until February 7, 1972. The age of majority was established by 16 V.I.C. § 261 as 21 years and it continued to be 21 years until that section was amended effective November 29, 1972, at which time it was reduced to 18 years. Coralie Simon was a minor rather than an adult for purposes of adoption and, therefore, no precedent was established.

■ It is fundamental to the concepts of statutory construction that the legislative intent is controlling. This Court, therefore, in construing Chapter 5 of Title 16 should ascertain and declare the intention of the legislature and by this memorandum opinion carry its intention into effect. 73 Am.Jur.2d, Statutes, § 146. Among the things to be

[1] Paragraphs 2 and 3 of the petition read as follows:
"2. Petitioner is the step-Father of the adult, Patricia Mercedes Williams, and has been since October 5, 1953.
3. Said adult, Patricia Mercedes Williams, is a female, born in Frederiksted, St. Croix, Virgin Islands, on the 15th day of January, 1952."

considered in ascertaining the legislative intent are the purpose, object and aim of the statute. A construction which impairs, frustrates or defeats the purpose or objectives of the statute should be avoided. The purpose, object or aim of a statute must be gathered from the whole act rather than any isolated section thereof, in its context and, where possible, with due consideration of the legislative history.[2]

Unfortunately, our act was carried over from the 1921 Codes and a legislative history is unavailable. Therefore, utilization of the other criteria mentioned must be maximized to succeed in the quest for legislative intent.

The critical words of the statute which are words of common usage, but having more than one meaning, must be construed in such fashion as to best attain the statute's purpose, even though the ordinary meaning thereof is thereby enlarged or restricted. Moyer v. Workmen's Compensation Appeals Board, 514 P.2d 1224.

The issue to be determined is simply whether the terms "child" and "person" as used in Chapter 5 were intended by the legislature to be terms of relationship or minority. This Court holds the terms to designate relationship.

■ 16 V.I.C. § 141 uses both the phrase, "adopt a child" and "child's name" but also provides that "no *person* shall be adopted" (emphasis added). In the context of section 141, there is no reasonable basis to infer that the legislature intended to assign a different meaning to these terms. In fact, a reading of Chapter 5 of Title 16 in its entirety indicates an interchangeable use of the words "child" and "person" by the legislature. At no point in Chapter 5 is the word "minor" used, although section 144 provides that no

---

[2] See *Colgate-Palmolive-Peet Co. v. United States*, 320 U.S. 422, 88 L.Ed. 143, 64 S.Ct. 227; reh. den. 320 U.S. 816, 88 L.Ed. 493, 64 S.Ct. 433. *Helvering v. Hammell*, 311 U.S. 504, 85 L.Ed. 303, 61 S.Ct. 368. *73 Am.Jur.2d, Statutes,* §§ 158, 187, 188, and 189.

adoption shall be made without his or her consent, *"If the child is 14 years of age or upwards . . ."* (emphasis added). Likewise, section 145(c) permits inspection of the proceedings by the "adopted person (if he has attained his majority . . .)". In its context, one must accept as a reasonable inference to be drawn from the language the fact that the adoptive child may be an adult.

The Court has already alluded to the fact that the legislative intent is controlling in the interpretation of a statute. Reference to section 146(a) evinces a clear intention of the legislature to provide another method of designating an heir and providing for inheritance.[3]

While it is true that adoption was unknown at common law and is therefore governed by statute, there is no substantial public policy which militates against an interpretation of our statute to permit adoption of adults. On the contrary,

To provide flexibility in the devolution of property, statutes should permit the adoption of adults, and in many states they do . . . . The consequences are that the person adopted may inherit from the adopting person or may be entitled to other financial benefits by virtue of the relationship so created. Clark on Domestic Relations, Chapter 18, Adoption, § 18.7.

The Uniform Adoption Act (which has not been enacted in this jurisdiction) also recognizes the desirability of permitting adult adoptions by specifically providing in Section 2 that "any individual may be adopted." In the Commissioner's Prefatory Note to the Uniform Act, it is said that, "This act permits any individual whether an adult or a minor to be adopted . . ." Furthermore, in the Commissioner's note following Section 1 of the Uniform Act, it is said:

---

[3] Although the case deals essentially with an inheritance tax question, *Estate of Romalia Wheatley*, 4 V.I. 72, 174 F.Supp. 868 (1959) supports this exposition of legislative intent.

"Child" is defined so as to include both an adult and a minor as a child capable of being adopted. If an adult is adopted, he becomes a "child" of the adoptive parents to the same extent that a natural child is a "child" of his natural parents even though he is an adult.

These comments further support the desirability of allowing the adoption of adults and the legislative policy and intention to establish an alternate means of providing heirship and inheritance.

Finally, there is substantial case law in other jurisdictions which assists in reaching the conclusion already stated. In Norton v. Stark, 294 S.W. 689 (Ct.Civ.App., Texas, 1927), it was held that adoption is not a common law proceeding and is dependent entirely upon the statutes providing for it. The Texas statute spoke of adopting a "child," no definition of that term being established. The Court further held, in pertinent part, that, "the majority of the states seem to have construed statutes using the word 'child' as permitting the adoption of an adult . . . . The use of the word 'child' does not necessarily imply that the one subject to adoption must be a minor, but is but a term to express the relation between the person adopted and the one adopting as to the right to inherit the latter's property."

In Sheffield, et al. v. Franklin, 44 So. 373 (S.Ct. Ala., 1907), a case in which it was asserted that an adult adoptee was never legally adopted because adoption of adults was not permitted by the existing statutes, it was held that adult adoption was permissible.

The statute in question used the word, "child." The court held that the word, "child," was a term of relationship not indicative of age, and that, "the word 'child' has two generally understood meanings—one that of relationship; and the other, minority." And, "While it is true, in many senses (that) the word imports minority, infancy, the early years of life; [but] the lexicographers put, as its first meaning, that of relationship . . . ." For more recent cases

reaching the same result, see the annotation at 21 A.L.R.3d 1017, § 3. See also, Black's Law Dictionary, Fourth Ed. where the word "child" is defined simply as "progeny."

It is, therefore, this Court's conclusion that the most reasonable, appropriate and accurate interpretation of the Virgin Islands adoption statutes (Chapter 5, Title 16 of the Virgin Islands Code) authorizes the adoption of adults as well as minors.

This Court must address itself to one further problem arising out of the above entitled matter. After the filing of the petition, this Court entered an Order on March 22, 1977, directing the Department of Social Welfare to "undertake the appropriate investigation of the home and family of Glen Williams" to comply with the requirements of 16 V.I.C. § 145(a).[4] On June 14, 1977, a letter was received by the Court which is reproduced here in toto.

We have received your petition dated March 22, 1977 concerning the adoption of Miss Patricia Williams by Mr. Glen Williams.

Our agency has jurisdiction to handle adoption for children only. Since Miss Williams is 24 years old, we conferred with the Assistant Attorney General who has been assigned to represent this department on Legal Matters. We were advised that since Ms. Williams is in no way handicapped, this matter is out of our jurisdiction. Thus, a home evaluation is not forthcoming.

If there is a need, please feel free to contact me at my office in Frederiksted at telephone number 2–0085.

The provisions of 16 V.I.C. § 145(a) insofar as they relate to the Department of Social Welfare are mandatory rather than permissive. See In the Matter of the Adoption of Lee, Jung Hee, a Minor, (D.C.V.I., St. Croix, 1974), Docket No. Misc. 40/1973.

The Commissioner must make a report and recommendation with respect to the proposed adoption. The circum-

---

[4] 16 V.I.C. 145(a) provides, in part:
"... and the Commissioner of Public Welfare has submitted his report and recommendation with respect to the proposed adoption, ..."

stances surrounding any proposed adoption must be taken into consideration in determining the depth of the study to be undertaken, however, for to require the same degree of investigation in adoptions of adults as is required in adoptions of minors would simply be a meaningless exercise in adherence to the printed word, lacking any semblance of practicality or common sense.

The legal concept, however, that a person subjected to the provisions of a Court order who is in any fashion aggrieved by that order or believes it to be inappropriate as applied to him, can remedy the situation only by moving to vacate or modify the order or, in appropriate circumstances by an appeal therefrom, is so basic that it needs no citation. It is undoubtedly true that a governmental agency in attempting to ascertain the applicability of an order to it may, and in fact most certainly should, seek a legal opinion from the Office of the Attorney General, its statutory legal adviser, and it is further appropriate that the Department of Law respond by written opinion. Needless to say, however, the law is not determined by the Department of Law, but is determined by the judiciary whose function it is to interpret the law and apply it to factual situations presented to it. The submission of a letter such as that directed to this Court by the Department of Social Welfare and set forth above borders dangerously close to the precipice of contempt.

In the subject case, it is clear that the Department of Social Welfare pursued its position in reliance on the advice given it by the Attorney General assigned to represent it and not out of a wilful or intentional desire to obstruct or interfere with the administration of justice or the activities of the Court. For that reason and that reason alone, this Court has undertaken to direct a reminder to the Department of Social Welfare in particular, and all other persons and governmental agencies in general, of the

appropriate steps to be taken when such person or agency feels the need of modification of such an order, as well as the consequences of the failure to follow that established procedure.

In the future, upon receipt of an Order directing the Department to undertake a field study in any adoption matter, the Department of Social Welfare *shall* conduct a study which is commensurate with and appropriate to the particular case and *shall* submit its report to the Court pursuant to the statutory requirement. Such report may be as limited, cursory or extensive as the particular matter may demand, but the report and recommendation *shall* be filed in accordance with the order of the Court.

### ORDER

It is, therefore, ORDERED that the Commissioner of Social Welfare undertake the statutory investigation of the proposed adoptive parent and child forthwith and submit his report and recommendation in connection therewith within 30 days after the date of the entry of this order; and it is further

ORDERED that the matter be set down for final hearing on November 16, 1977.