Kelly B. NILES, By and Through his Co-Conservators, David F. NILES and Joan A. Macmahon, Plaintiff-Appellee,

v.

UNITED STATES of America, Defendant-Appellant.

No. 82–4278.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Feb. 17, 1983.

Decided July 19, 1983.

Jerry H. Robinson, Heller, Ehrman, White & McAuliffe, San Francisco, Cal., for plaintiff-appellee.

James Miller, Washington, D.C., for defendant-appellant.

Before DUNIWAY, CHOY and ALARCON, Circuit Judges.

CHOY, Circuit Judge:

In this tax-refund suit, the Internal Revenue Service (IRS) appeals from a summary

judgment for taxpayer Niles. The novel issue on appeal is whether the IRS may allocate a portion of a lump-sum personal injury award to future medical expenses (resulting from the injury) and disallow deduction of those medical expenses to the extent of the allocation. The district court ruled that the IRS may not make such an allocation. We affirm.

## I. Facts and Proceedings Below

The facts of this case are not disputed. In 1970, Kelly Niles, then 11 years old, suffered a head injury during a playground scuffle. Subsequent negligent medical care left Niles with irreparable brain damage. He is now a quadriplegic, unable to speak or take care of himself.

Niles' personal injury action in 1973 resulted in a lump-sum jury award of $4,025,-000. At trial, Niles presented detailed, substantially unrebutted evidence (including expert testimony) as to each specific component of the total economic loss he claimed as part of the damage award. The verdict was attacked as excessive, but the California Court of Appeal affirmed. *Niles v. City of San Rafael,* 42 Cal.App.3d 230, 116 Cal. Rptr. 733 (1974). During the course of that appeal, in an effort to prove that the award was not excessive, Niles again presented a detailed, hypothetical itemization of the award, allocating $1,588,176 to future medical expenses. Niles collected the personal injury award, but properly excluded it from his gross income under I.R.C. § 104(a)(2).[1]

In 1978, the IRS asserted income tax deficiencies against Niles for the years 1973 through 1976. The only deficiency before

this court is for medical expenses deducted in 1975. In an unprecedented move, the IRS disallowed the deduction on the ground that the expenses had already been compensated for within the meaning of I.R.C. § 213(a)[2] by virtue of Niles' receipt of the lump-sum award. The IRS reasoned that if Niles were allowed to deduct amounts he received in a personal injury award that were intended as compensation for future medical expenses, he would be getting an exclusion and a deduction for the same monies. The IRS adopted the allocation Niles presented to the California Court of Appeal, and ruled that Niles cannot deduct any future medical expenses until the aggregate amount of such expenses exceeds $1,588,-176. Niles paid the deficiency and sued for a refund in district court. At trial, both parties moved for partial summary judgment. The district court granted summary judgment in favor of Niles, holding that he satisfied his burden of proof by demonstrating that the IRS has no authority to allocate lump-sum awards. *Niles v. United States,* 520 F.Supp. 808, 814–15 (N.D.Cal. 1981).

## II. Standard of Review

Summary judgment is proper only where there are no genuine issues of material fact or where, viewing the evidence and the inferences which may be drawn therefrom in the light most favorable to the adverse party, the movant is clearly entitled to prevail as a matter of law. Fed.R.Civ.P. 56(c); *Ferguson v. Flying Tiger Line, Inc.,* 688 F.2d 1320, 1322 (9th Cir.1982). Where, as here, there are no genuine issues of materi-

---

**1.** I.R.C. § 104(a)(2) (1976) (amended 1983) read in pertinent part:

Except in the case of amounts attributable to (and not in excess of) deductions allowed under section 213 (relating to medical, etc., expenses) for any prior taxable year, gross income does not include ... the amount of any damages received (whether by suit or agreement) on account of personal injuries or sickness.

**2.** I.R.C. § 213(a) (1976) (amended 1982) provided:

There shall be allowed as a deduction the following amounts, not compensated for by insurance or otherwise—

(1) the amount by which the amount of the expenses paid during the taxable year (reduced by any amount deductible under paragraph (2)) for medical care of the taxpayer, his spouse, and dependents (as defined in section 152) exceeds 3 percent of the adjusted gross income, and

(2) an amount (not in excess of $150) equal to one-half of the expenses paid during the taxable year for insurance which constitutes medical care for the taxpayer, his spouse, and dependents.

al fact underlying the district court's adjudication, we determine whether the substantive law was correctly applied. *See Gaines v. Haughton,* 645 F.2d 761, 769–70 (9th Cir.1981), *cert. denied,* 454 U.S. 1145, 102 S.Ct. 1006, 71 L.Ed.2d 297 (1982).

III. *Discussion*

▮ In any tax-refund case, the Commissioner's deficiency determination is presumptively correct and the taxpayer has the burden of proving that such deficiency is erroneous. *Welch v. Helvering,* 290 U.S. 111, 115, 54 S.Ct. 8, 9, 78 L.Ed. 212 (1933); *Amfac, Inc. v. Commissioner,* 626 F.2d 109, 113 n. 9 (9th Cir.1980). Furthermore, since tax deductions are a matter of legislative grace, the taxpayer bears the burden of showing that he comes within the provisions of a specific deduction. *New Colonial Ice Co. v. Helvering,* 292 U.S. 435, 440, 54 S.Ct. 788, 790, 78 L.Ed. 1348 (1934); *Merlino v. Commissioner,* 660 F.2d 415, 416 (9th Cir. 1981).

Niles must prove that he did not receive compensation within the meaning of § 213(a) for the medical expenses he claimed as a deduction on his 1975 tax return. The district court felt that Niles satisfied his burden of proof by showing that he received a lump-sum personal injury award and that there is no basis upon which the IRS may allocate any part of such an award to future medical expenses.

The Government persistently asserts that in order for Niles to meet his burden of proof, he must prove that no part of the lump-sum award was intended as compensation for the medical expenses he claimed on his 1975 tax return. The Government, it is clear, assumes the conclusion that a portion of a lump-sum jury award is in fact allocable as compensation for future medical expenses. If an award is not so allocable, then Niles has satisfied his burden by proving that the alleged compensation for future medical expenses is part of an unapportioned lump-sum personal injury award. The question of allocability is thus at the heart of the dispute.

▮ We initially note that there is no statutory authority or case law supporting the IRS' authority to allocate.[3] Therefore, in determining the propriety of the IRS' actions, we must focus on the question of whether such actions are unreasonable or plainly inconsistent with the Internal Revenue Code. *See National Muffler Dealers Assn., Inc. v. United States,* 440 U.S. 472, 488, 99 S.Ct. 1304, 1312, 59 L.Ed.2d 519 (1979); *United States v. Correll,* 389 U.S. 299, 307, 88 S.Ct. 445, 449, 19 L.Ed.2d 537 (1967).

In attempting to allocate a portion of Niles' lump-sum jury award to future medical expenses, the Government is changing an administrative practice almost as old as the income tax itself. It was in 1922 that the Government declared it would not make allocation from lump-sum verdicts.

While a jury endeavors roughly to compute the amount of damage inflicted, in the very nature of things *there can be no correct estimate of the money value of the invaded rights.* The rights on the one hand and the money on the other are incomparable things which can not be placed on opposite sides of an equation.

Sol. Op. 132, I–1 C.B. 92, 93 (1922) (emphasis added). In that opinion, the Solicitor also said: "Before the enactment of the Revenue Act of 1918, which specifically exempted from gross income damages for personal injuries, it was held that damages for personal injuries due to accident do not constitute income. T.C. 2747 (not published in Bulletin Service)."

▮ The continuous administrative practice of nonallocation is illustrated by two letter rulings from the 1960's that sanc-

3. Revenue Ruling 79–427, 1979–2 C.B. 120, specifically addresses the issue in this case and concludes that although the jury did not allocate a specific amount for future medical expenses, an allocable amount may be determined based on the best evidence available under the circumstances. We do not rely on nor pass judgment on the propriety of Revenue Ruling 79–427 since it was promulgated during the audit, and was based on the facts of the instant case. As the district court noted, we cannot allow the IRS to take advantage of a self-serving ruling. *See Estate of Lang v. Commissioner,* 613 F.2d 770, 776 (9th Cir.1980); *Pauley v. United States,* 11 A.F.T.R.2d 955, 960 (S.D.Cal.1963).

tioned nonallocation of both lump-sum awards and unallocated settlement payments.[4] It would be no exaggeration to suppose that the nonallocability of lump-sum awards to future medical expenses has been a basic presumption of litigants in thousands of personal injury suits over the years. This court does not look favorably upon an administrative change in "a principle of taxation so firmly entrenched in our jurisprudence," *Commissioner v. Greenspun,* 670 F.2d 123, 126 (9th Cir.1982), particularly when that change is sought by means of adjudication in a particular audit.

The Government seeks to distinguish the past administrative precedent, which, the Government concedes, correctly interpreted § 213(a). It argues that the past nonallocation is justified by the speculative nature of past lump-sum awards, whereas the present allocation is not speculative in light of the arguments of Niles' counsel before the California Court of Appeal. In other words, Niles is subject to taxation, while other lump-sum recipients are not, because of the success of Niles' attorneys in defending the award. This is a strange basis to distinguish among taxpayers, as well as completely irrelevant to the net-income concept underlying the income tax. "We should be slow to attribute to Congress a purpose producing such unequal treatment among taxpayers, resting on no rational foundation." *United States v. Gilmore,* 372 U.S. 39, 48, 83 S.Ct. 623, 629, 9 L.Ed.2d 570 (1963). *See also Colgate-Palmolive-Peet Co. v. United States,* 320 U.S. 422, 425, 64 S.Ct. 227, 229, 88 L.Ed. 143 (1943).

■ Even if this distinction among recipients of lump-sum awards could be justified

by a rational basis such as administrative convenience, it would still be unpersuasive for the reason that there is in fact no difference in the degree of speculation in allocating Niles' award from that of anyone else. The mere defense of the award by Niles on appeal provides no evidence at all of what Niles' jury meant to allocate to Niles' future medical expenses. That, after all, is the only question—what *that jury* meant to allocate to Kelly Niles' future medical expenses.[5] It is, we suppose, possible that the jury meant to allocate precisely $1,588,176 of its award toward Niles' future medical expenses. It also seems possible that the jury did not decide on any allocation, but merely decided that $4 million would be a nice round sum, upon which $25,000 might be added as a "sweetener." While defending this award on appeal, Niles was merely required to show that the award was not so large as to "shock[ ] the conscience and suggest[ ] passion, prejudice or corruption on the part of the jury." *Seffert v. Los Angeles Transit Lines,* 56 Cal.2d 498, 507, 364 P.2d 337, 342, 15 Cal.Rptr. 161, 166 (1961). As a means to this end, a hypothetical breakdown may be used to illustrate the reasonableness of the award. It was *not* Niles' burden to prove that any specific allocation was in fact made by the jury.[6] A hypothetical allocation of any personal injury award can always be made, based upon evidence presented to an awarding jury. The allocation in this case is no less speculative than in any other case merely because Niles speculated on the record.[7] The Government's attempt to distinguish this case from all others subsumed

---

4. I.e., Letter Rulings 6207314840A (July 31, 1962) (lump-sum award), and 6510284440A (October 28, 1965) (settlement). Letter rulings have no precedential force, but they are competent evidence of administrative practice. *See Rowan Cos. v. United States,* 452 U.S. 247, 261 n. 17, 101 S.Ct. 2288, 2296 n. 17, 68 L.Ed.2d 814 (1981).

5. It is undisputed that had this jury ignored the evidence of future medical expenses and specifically allocated the entire award to general damages, none of the award would come within the ambit of I.R.C. § 213(a).

6. It is for this reason, among others, that Niles is not collaterally estopped to accept the allocation he argued to the California Court of Appeal. *See General Teamsters, Auto Truck Drivers & Helpers Local 162 v. Mitchell Bros. Truck Lines,* 682 F.2d 763, 768 (9th Cir.1982).

7. The parties agree that if part of the award had been expressly allocated to future medical expenses, those expenses would not be deductible to the extent compensated for by the award, as per Revenue Ruling 75–232, 1975–1 C.B. 94.

under its venerable administrative practice of nonallocation is thoroughly unpersuasive.

Furthermore, to allow the IRS to allocate selected lump-sum personal injury awards would be akin to opening Pandora's box in terms of the problems it would cause, not only in federal courts, but in state courts as well. Federal courts would be confronted with the bewildering task of determining whether the IRS' insight into the collective psyche of a jury in a personal injury case is the correct one. Moreover, federal courts would be threatened with a rash of refund suits occurring whenever the IRS descries a particular unapportioned personal injury award that might be apportioned in the wisdom of the Service. State courts might be confronted with deliberately vague and speculative estimates of future medical expenses given by personal injury plaintiffs in order to escape the purview of the IRS. Perhaps even more deleterious would be the possibility of forum shopping. Plaintiffs would seek that forum in which the most favorable information regarding the taxability of awards may be conveyed to jurors. Such disparate jurisdictional impact is to be avoided when construing the Code. *Cf. Hawaiian Freight Forwarders, Ltd. v. Commissioner,* 196 F.2d 745, 747 (9th Cir.1952) (court must choose construction that will have uniform application throughout country).

We do not think that by allowing Niles to deduct his medical expenses we would "flout[ ] the will of Congress," as the Government charges. Rather, by refusing to allow the IRS to deviate from such a long-standing and well-understood administrative practice, we are presumptively supporting the will of Congress. " '[L]ong-continued practice, known to and acquiesced in by Congress, would raise a presumption that the [action] had been [taken] in pursuance of its consent . . . .' " *Dames & Moore v. Regan,* 453 U.S. 654, 686, 101 S.Ct. 2972, 2990, 69 L.Ed.2d 918 (1981) (quoting *United States v. Midwest Oil Co.,* 236 U.S. 459, 474, 35 S.Ct. 309, 313, 59 L.Ed. 673 (1915)). Moreover, the Supreme Court has specifically emphasized the probative value of long-standing administrative practice in the interpretation of the Internal Revenue Code. *See Fribourg Navigation Co. v. Commissioner,* 383 U.S. 272, 279–86, 86 S.Ct. 862, 866–70, 15 L.Ed.2d 751 (1966). *See also Hardee v. United States,* 708 F.2d 661, 664 (Fed.Cir.1983). While it may be true that nonallocation does allow Niles a double tax benefit, it is a tax benefit that has for decades been freely conceded to be in conformity with the Code. A sudden departure from this entrenched administrative practice of nonallocation may not be taken by the fortuitous occasion of a single audit. Nor, at this point, will a new interpretation of the Code be given by this court. "When a principle of taxation requires reexamination, Congress is better equipped than a court to define precisely the type of conduct which results in tax consequences." *United States v. Byrum,* 408 U.S. 125, 135, 92 S.Ct. 2382, 2389, 33 L.Ed.2d 238 (1972).

IV. *Conclusion*

Our holding is narrow. Medical expenses of a taxpayer are not "compensated for" within the meaning of I.R.C. § 213(a) by any portion of a previous lump-sum personal injury jury award.

AFFIRMED.