Irving D. FRIEDMAN, Plaintiff,

v.

UNITED STATES of America and Interstate Commerce Commission, Defendants.

Civ. No. 138–351.

United States District Court
S. D. New York.

Dec. 23, 1958.

Irving D. Friedman, New York City, pro se.

Victor R. Hansen, Asst. Atty. Gen., Arthur H. Christy, U. S. Atty., New York City, James E. Kilday and E. Riggs McConnell, Attys., Department of Justice, Washington, D. C., for United States.

Robert W. Ginnane, General Counsel, and Carroll T. Prince, Jr., Washington, D. C., for Interstate Commerce Commission.

Frederic A. Collins and Donald L. Wallace, New York City, Erle J. Zoll, Jr., Chicago, Ill., of counsel, for Intervening Railroad Defendants.

Before SWAN, Circuit Judge, and RYAN and HERLANDS, District Judges.

SWAN, Circuit Judge.

This suit comes before a three-judge district court pursuant to 28 U.S.C.A. §§ 1336, 1398, 2284, 2321–2325, and 5 U.S.C.A. § 1009. It seeks to annul and set aside a report and order of the Interstate Commerce Commission dated April 14, 1958, 295 I.C.C. 731, which authorizes the mergers of The Alabama and Vicksburg Railway Company and the Vicksburg, Shreveport and Pacific Railway Company into the Illinois Central Railroad Company, and to enjoin enforcement of the order. For brevity the railroads will be referred to respectively as Alabama, Vicksburg and Illinois Central. The railroad corporations have

been allowed to intervene as defendants. Plaintiff's application to the Commission for reconsideration of the report and order was denied by order dated September 29, 1958. Hence he had exhausted administrative remedies prior to filing the present suit in October, 1958. Joint answers to the complaint were filed by the United States and the Interstate Commerce Commission praying that the complaint be dismissed. The intervening railroads have also answered and asked for dismissal of the complaint.

The order under attack was issued pursuant to powers conferred upon the Commission by § 5(2)(b) of the Interstate Commerce Act, as amended, 49 U.S.C.A. § 5(2)(b), which authorizes the Commission to approve a merger of railroads which it finds "consistent with the public interest" on such terms as it finds "to be just and reasonable." The proceedings before the Commission were initiated by the intervening railroads' applications for authority to merge. A public hearing was had at which the present plaintiff was heard in opposition to the railroads' application. A brief statement of the underlying facts will suffice. By lease dated March 31, 1925 Alabama, as lessor, leased its railroad to the Yazoo and Mississippi Valley Railroad Company, as lessee, for a term expiring July 1, 2282. The lessee covenanted to pay rent, which included (among other things) a sum equal to six per cent of the par value of the capital stock of the lessor outstanding on the date of the lease. By agreement between Alabama and Illinois Central the latter guaranteed payment by the lessee of all sums required to be paid by it under the aforesaid lease.[1] Illinois Central, as successor to the original lessee, is now operating the properties of Alabama and is subject to the obligations of the original lessee.

Plaintiff is a minority stockholder in both the Alabama and the Vicksburg companies and also claims to be a creditor of the Illinois Central.[2] His brief asserts that "By virtue of the leases, the Alabama and the Vicksburg stockholders became the landlord and creditor of the Illinois Central, in addition to retaining their rights and status as stockholders of their own companies." From this premise he argues (1) that the leases are legal impediments to a merger because the obligation of the Illinois Central to make rental payments until July 1, 2282 cannot legally be terminated by merger; (2) that the compensation of $155. per share for his Alabama stock and $126.50 per share for his Vicksburg stock, which he is offered under the terms of the merger, is an illegal confiscation of his property; and (3) that the Commission erred in not considering evidence of the values of the leased railroads.

Plaintiff's claim that he is a creditor of Illinois Central and is entitled to receive payments of $6 per year on each share of his Alabama stock, until July 1, 2282, is based on two theories: (1) that the lease bound the lessee to make to stockholders of Alabama annual payments of $6 per share until July 1, 2282, and (2) that Illinois Central contracted with Alabama's stockholders to make such payments by reason of endorsements on their stock certificates. Plaintiff is mistaken in thinking that the lessee entered into any contractual relationship with the lessor's stockholders. The terms of the lease are very specific in stating that the lessee's promises run only to the lessor. These specific provisions are set forth in the margin.[3]

1. On the same date Vicksburg, as lessor, executed a similar lease, and Illinois Central gave a similar guaranty that a sum equal to five per cent of the par value of the lessor's outstanding capital stock would be paid. As the issues are the same under both leases, we shall discuss only the Alabama lease and guaranty.

2. At the time of the order under attack plaintiff owned about one per cent of Alabama stock and one half per cent of Vicksburg stock.

3. Section 2 of Article Two reads as follows:

"SECTION 2. The lessee covenants to and with the lessor to pay yearly and

Section 1 of Article Nine makes it perfectly clear that the stockholders of Alabama are neither third-party beneficiaries nor donee beneficiaries of the lessee's promises to the lessor. Section 2 of Article Nine makes equally clear that the lease does not preclude a transfer by merger or sale of the railway and properties of the lessor.

Plaintiff also relies upon the legend endorsed upon his stock certificates as giving him a contractual right against Illinois Central. In this also he is mistaken. The final sentence of the endorsement shows plainly that the obligations of the lessee and guarantor are those expressed in the lease and guaranty, to copies of which the certificate holder is referred for ascertainment of his rights.[4]

every year during the existence of this lease, and for any part of a year in proportion, the following amounts:

\*　　\*　　\*　　\*　　\*

"(g) To the lessor a sum semi-annually, on the first day of April and October of each year during the term of this lease, equal to six per cent (6%) of the par value of the present outstanding capital stock of the Lessor, \* \* \*.

"It is agreed that said semi-annual payments, or any of them, must be made to the Lessor, if it so instructs the Lessee by timely notice in writing, but, in the absence of such instruction from the Lessor, the Lessee may make said semi-annual payments either to the Lessor or directly to the stockholders of record of the Lessor, as the Lessee may, from time to time, and at any time, elect. Any such payments made to the stockholders shall be in the proportion of their respective holdings of shares, and in case of such payment directly to the stockholders, evidence of the payment shall be preserved by the Lessee and furnished to the Lessor whenever the same shall be requested."

Section 1 of Article Nine, reads as follows:

"Nothing in this Indenture, expressed or implied, is intended or shall be construed to give to any person or corporation other than the parties hereto, their successors and assigns, any legal or equitable right, remedy or claim under or in respect of this Indenture or under any covenant, condition or provision herein contained or the guaranty thereof; all the covenants, conditions and provisions herein and in the said guaranty being intended to be and being for the sole and exclusive benefit of the parties hereto, their successors and assigns."

Section 2 of Article Nine, reads as follows:

"Section 2. Nothing contained in this Indenture shall prevent the transfer by \* \* \* merger with or sale to the Lessee, its successors or assigns, of the railway and properties of the Les-

sor, or any \* \* \* merger of the Lessee with any other corporation or corporations; \* \* \*. But in case of any such \* \* \* merger \* \* \* (except \* \* \* between the Lessor and the Lessee, its successors or assigns, or between the Lessor and said Guarantor, its successors or assigns), proper provisions shall be embodied in any instrument or instruments effecting the same for the preservation and maintenance of the rental to be paid by the Lessee, its successors or assigns, to the Lessor, as herein provided, \* \* \*."

4. The complete endorsement reads as follows:

"By an Indenture of lease bearing date the 31st day of March, 1925, and approved by the Interstate Commerce Commission on the 3d day of May, 1926, The Alabama and Vicksburg Railway Company as Lessor, has leased its railroad and the appurtenances thereof and certain other property to The Yazoo and Mississippi Valley Railroad Company, as Lessee, from the day of the approval of the said lease by the Interstate Commerce Commission until the first day of July, 2282, and for such further term for which said lease may be extended as provided therein; and as rental therefor the Lessee has covenanted to pay (inter alia) on the 1st day of April and the 1st day of October in each year during said term, a sum equal to six per cent. (6%) of the par value of the Capital stock of the Lessor issued and outstanding on March 31, 1925; being the equivalent of three per cent. (3%) semi-annually on the amount of said stock now outstanding, to wit: $4,200,000 par value thereof. By an agreement bearing date the 31st day of March 1925, and approved by the Interstate Commerce Commission on the 3d day of May, 1926, between Illinois Central Railroad Company and said The Alabama and Vicksburg Railway Company, said Illinois Central Railroad Company has unconditionally guaranteed the due and punctual payment by said Lessee of all sums required to be paid by it under the terms and provisions of said

Plaintiff's claim that the Illinois Central is under any contractual duty to him cannot be sustained. His reliance on such cases as King v. Richardson, 4 Cir., 136 F.2d 849, 861, certiorari denied 320 U.S. 777, 64 S.Ct. 91, 88 L.Ed. 466, to the effect that "merger will not be applied where its effect would be to prejudice the rights of innocent third persons," is misplaced. Much closer in point is Flagg v. Manhattan Ry. Co., C.C.S.D.N.Y., 10 F. 413.

■ Plaintiff's second contention which relates to the valuation of his shares of stock is also not sustainable. Because of the broad authority conferred upon the Commission by § 5 of the Interstate Commerce Act and the technical complexities of a merger case, the doctrine of administrative finality is particularly applicable. In McLean Trucking Co. v. United States, 321 U.S. 67, at page 87, 64 S.Ct. 370, at page 381, 88 L.Ed. 544, the court approved an order of the Commission under § 5, the opinion stating:

"* * * Resolving these considerations is a complex task which requires extensive facilities, expert judgment and considerable knowledge of the transportation industry. * * * 'The wisdom and experience of that commission,' not of the courts, must determine whether the proposed consolidation is 'consistent with the public interest.' * * * If the Commission did not exceed the statutory limits within which Congress confined its discretion and its findings are adequate and supported by evidence, it is not our function to upset its order." [5]

In approving a voluntary merger the Commission must find, first, that it "will be consistent with the public interest"; second, that it is "just and reasonable."

See Schwabacker v. United States, 334 U.S. 182, 194, 68 S.Ct. 958, 965, 92 L.Ed. 1305. With respect to the meaning of "just and reasonable" the court said 334 U.S. at page 199, 68 S.Ct. at page 967:

"* * * In appraising a stockholder's position in a merger as to justice and reasonableness, it is not the promise that a charter [of the state of incorporation] made to him but the current worth of that promise that governs, it is not what he once put into a constituent company but what value he is contributing to the merger that is to be made good."

In the case at bar the Commission made an appraisal of what plaintiff is contributing to the merger. Its report states:

"Upon consideration of all the evidence we are of the opinion and find that the fair values of the considered stocks do not exceed amounts which would be produced by capitalizing the respective dividends at a rate between 4.25 and 4.50 per cent. Capitalizing the dividends at the lower of these rates would produce $141.18 per share for the Alabama stock and $117.65 per share for the Vicksburg stock. However, to avoid any possibility of injustice to the minority stockholders and to afford the present holders of these stocks the same prices which we have heretofore authorized Illinois Central to pay, and in view of the latter's willingness to pay the larger amounts or to exchange its stock upon the basis of the indicated prices, we are of the opinion that it will be consistent with the public interest to approve the merger upon the terms proposed, and that under these terms the holders of the leased lines' stocks will receive the fair economic equiv-

Indenture. For full and more definite statement of the obligations of the Lessee and guarantor, respectively, in the respects above noted, reference is made to the said lease and guaranty copies of which are on file in the office of the Transfer Agent."

5. See also Stott v. United States, D.C. S.D.N.Y., 166 F.Supp. 851 and authorities cited at page 855; O. C. Wiley & Sons v. United States, D.C.W.D.Va., 85 F. Supp. 542, 544, affirmed 338 U.S. 902, 70 S.Ct. 308, 94 L.Ed. 554.

alent of the rights surrendered by them."

Plaintiff contends that the Commission has no authority in law to capitalize the contractual liability of Illinois Central to pay at the rate of $6 and $5 a year, per share, until July 1, 2282. But as we have previously demonstrated Illinois Central is under no such contractual liability to plaintiff. The Commission's capitalization of the present value of future rental payments is generous, and is amply supported by the evidence.

 Plaintiff's third contention requires little discussion. Before the hearing examiner plaintiff moved to require the railroad applicants to furnish a statement segregating the traffic revenues derived from operation of the leased properties, in order to determine the value of his stocks from the standpoint of earnings contributed to Illinois Central. The examiner denied the motion and his ruling was sustained, the Commission citing its prior decision, Delaware L. & W. Co. Merger, 257 I.C.C. 91, to the effect that where a lease in perpetuity is involved, which for practical purposes the present is, the rental represents the earnings of the property so far as the stockholders of the leased lines are concerned. Plaintiff now urges that the absence of evidence of the earning power and values of the leased lines makes it impossible to ascertain the value of the stock of Alabama and Vicksburg.[6] Plaintiff's argument lacks merit. We agree with the Commission's statement that "For all practical purposes, the stocks of the leased lines have a value to their owners measurable solely by the fixed rental payable under the leases and the dividends payable therefrom on the stocks." Plaintiff as a stockholder in Alabama and Vicksburg may have an interest in their separate earning power in 2282, if the leases are not renewed, but at present his only ascertainable interest is in the rental they produce. As

said in Old Colony R. Co. v. New York, N. H. & H. R. Co., 2 Cir., 98 F.2d 670, 672 " * * * it is a fanciful notion that one may forecast the future value of a railroad half a century hence."

We find no basis for setting aside the report and order attacked by the complaint. Consequently the complaint should be dismissed. It is so ordered.

---

6. The brief of the United States and the Interstate Commerce Commission contends that plaintiff is precluded from raising this point because he failed to include it in his petition for reconsideration. It is unnecessary to pass on this contention.