GLENN M. AVERILL, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 28787, 40075. Promulgated October 8, 1930.

*Calvin Clark, Esq.*, for the petitioner.
*W. R. Langford, Esq.*, for the respondent.

1198

OPINION.

PHILLIPS: The sole issue in this proceeding is whether petitioner sustained a " net loss " in 1922 which may be carried forward and applied in 1923 and 1924 under the provisions of section 204 of the Revenue Act of 1921 and section 206 of the Revenue Act of 1924. The applicable provisions of these sections are as follows:

SEC. 204. (a) That as used in this section the term " net loss " means only net losses resulting from the operation of any trade or business regularly carried on by the taxpayer * * *.

(b) If for any taxable year beginning after December 31, 1920, it appears upon the production of evidence satisfactory to the Commissioner that any taxpayer has sustained a net loss, the amount thereof shall be deducted from the net income of the taxpayer for the succeeding taxable year; * * *

SEC. 206. (f) If for the taxable year 1923 a taxpayer sustained a net loss within the provisions of the Revenue Act of 1921, the amount of such net loss shall be allowed as a deduction in computing net income for the two succeeding taxable years to the same extent and in the same manner as a net loss sustained for one taxable year is, under this Act, allowed as a deduction for the two succeeding taxable years.

There is no dispute as to the amount of the loss sustained through the liquidation of the Berteschey Engineering Co. The issue is whether the loss sustained by the petitioner through the liquidation

of the Berteschey Engineering Co. resulted from the operation of any trade or business regularly carried on by him, or from an isolated venture as contended by the Commissioner.

In *J. J. Harrington*, 1 B. T. A. 11, we said "a trade or business regularly carried on must be held to mean a vocation and not an occasional isolated transaction."

In *Oscar K. Eysenbach*, 10 B. T. A. 716, we pointed out that "in order to constitute a 'net loss' it is not necessary that the taxpayer should sustain the loss in his principal business or vocation * * *. The taxpayer is entitled to the benefit where the loss is incurred in any trade or business regularly carried on by him."

The legal conception of a "trade or business regularly carried on" would seem to embrace those activities in which one regularly engages for the purpose of a livlihood or profit. See *W. H. Ostenberg*, 17 B. T. A. 738; *Elmore L. Potter*, 18 B. T. A. 549.

To come within the intendment of the statute it is not sufficient that the loss sustained be sustained in a business transaction. It must be sustained in a trade or business regularly carried on by the taxpayer. This Board has, therefore, distinguished between a business regularly carried on and a single, isolated transaction. Such was *J. J. Harrington, supra*. When an activity ceases to be isolated and assumes a continuity and importance that characterize it as an activity regularly engaged in, must necessarily depend on the facts of each particular case. Obviously in every case a business to be regularly carried on must be characterized by a continuing activity in some field of business endeavor. The loss contemplated by the statute is an operating loss, and the party claiming it must be the operator of the trade or business in which the loss occurs. Therefore, a business regularly carried on by the taxpayer means a business regularly operated by the taxpayer on his own behalf.

Relief to stockholders in a corporation who suffer loss through the liquidation of the corporation must often be denied upon the ground that theirs is not an operating loss, but an investment loss. An operating loss in the business carried on by a corporation is obviously sustained by the corporation operating the business; no loss of which the revenue acts take cognizance has then been sustained by a person whose relation to the business is that of a stockholder or bondholder. On the other hand, upon the sale of such stock or bonds or upon the failure or liquidation of the corporation the stockholder or bondholder may sustain an operating loss. This is entirely different from the operating loss of the corporation, and must rest upon the ground that investments in such stocks or bonds is a part of, or incident to, the operation of a trade or business regularly carried on by the taxpayer. It is obvious that an individual may suffer a "net loss" within the meaning of the statute upon

the failure of a corporation or a sale or other disposition of his interest therein. See *Charles H. Van Etten*, 8 B. T. A. 611; *E. M. Elliott*, 15 B. T. A. 494; *W. H. Ostenberg et al., supra; T. I. Crane*, 17 B. T. A. 720; *Edward H. Baker*, 17 B. T. A. 733; *Elmore L. Potter*, *supra; Hughes* v. *Commissioner*, 38 Fed. (2d) 755.

It appears from the evidence that petitioner was possessed of large resources. It was his policy to direct his business through corporations instead of as personal ventures. When he decided upon a business venture he would promote a corporation, become a stockholder in it and perhaps finance it. Sometimes he took over defunct corporations and reorganized and financed them. In the taxable year he was interested in approximately thirty-five corporations and he devoted his entire time and attention to promoting their interests in order that he might increase his profits. He was not content merely to invest his money in stocks and bonds in corporations managed by others, taking the inactive interest generally shown by such investors. He directed his efforts to getting good men to manage the various enterprises in which he was interested and to so diversify and carry on the businesses that one would help another. He received salaries from several of these corporations as an officer, and he frequently consulted and advised with all of them. These activities constituted petitioner's business. He devoted the usual business hours of each day to these activities. He has been so engaged during many years, in fact, throughout his entire business career. He maintained an office and employed sufficient help to carry on his business.

It appears that petitioner was a substantial stockholder in the public utility companies of Cedar Rapids. Anything which served to help the growth of the city helped his investments. Practically every enterprise which he undertook or in which he became interested was in that city. The promotion of the Berteschey Engineering Co. was not an isolated venture, but typical of the manner in which petitioner carried out his business plans. The petitioner and his son owned a factory site, ground and building, for which they were interested in getting a tenant. As the petitioner describes it in his testimony

A. * * * There was a man in Omaha, who had the Berteschey Manufacturing Company, and we brought him to Cedar Rapids and formed another corporation, called the " Berteschey Engineering Company," putting our ground and building in against his machinery; and then we increased it and made it into a manufacturing plant for the manufacture of precision machinery. We were making shapers right after the war, until the demand for shapers dropped off until we couldn't sell any.

Q. What happened to the Berteschey Engineering Company in 1922?

A. It had to go into the hands of a receiver; it never made any money. I furnished all of the money, all of the capital, and took stock for the ground and building * * *.

The line between one who invests in corporations and another whose dealings with corporations is so broad that it may be said to be his trade or business is not one which may be drawn clearly. See *J. L. Washburn*, 16 B. T. A. 1091; *T. I. Crane, supra; W. H. Ostenberg, supra; Elmore L. Potter, supra; E. D. Anthony*, 20 B. T. A. 5. It is difficult to distinguish the decision in the *Washburn* case from the later cases. We believe, however, that the principle upon which these later cases were decided is sound, that they should be followed, and that the instant case falls within them. The claim of petitioner is allowed. The amount of the net loss should be computed in accordance with the findings of fact.

Reviewed by the Board.

*Decision will be entered under Rule 50.*

MURDOCK dissents.