Martin C. McGowan and Willie Gay McGowan v. Commissioner.
McGowan v. Commissioner
Docket No. 1196-62.
United States Tax Court
T.C. Memo 1964-241; 1964 Tax Ct. Memo LEXIS 96; 23 T.C.M. (CCH) 1439; T.C.M. (RIA) 64241; September 15, 1964
*96 Held, on these facts, that petitioner, a retired corporate executive, is not entitled to deduct amounts paid for safaris, traveling expenses, cameras and film processing, and losses resulting therefrom, because he was not engaged in the trade or business of lecturing on big game hunting adventure films during the years 1957 through 1959. Max A. Reinstein, for the petitioners. Jay B. Kelly, for the respondent. DAWSON
Memorandum Findings of Fact and Opinion DAWSON, Judge: Respondent determined the following deficiencies in petitioners' income taxes: Year
Deficiency
1957
$13,310.55
1958
1,850.35
1959
4,704.07 The dispute in this case involves expenditures made by Martin McGowan which the respondent claims cannot be deducted as ordinary and necessary business expenses. The main *97 issue for decision is whether Martin McGowan was engaged in the trade or business of lecturing on big game hunting adventure films during the taxable years 1957, 1958, and 1959. If he was, then we are faced with the secondary issue as to whether deductions taken by him in his income tax returns for those years are ordinary and necessary expenses or capital expenditures. Findings of Fact Some of the facts were stipulated by the parties and are so found. Martin C. McGowan and Willie Gay McGowan are husband and wife, residing at 831 Maple Avenue, Downers Grove, Illinois. They filed their joint Federal income tax returns for the taxable years 1957, 1958 and 1959 with the district director of internal revenue at Chicago, Illinois. Martin McGowan (hereinafter called petitioner) retired as the general purchasing agent of the Electro-Motive Division of General Motors Corporation on June 30, 1957, after some 30 years of service. His duties included the purchase of Electro-Motive's large steel requirements and the supervision of some 70 members of the purchasing department. His compensation for this work was $52,019.66 in 1956. Immediately after his retirement petitioner and his younger *98 son, John, embarked on a six-month photographic big game hunting safari tour of Africa, India and the Far East. Petitioner was by no means a novice at this form of rugged travel and adventure. He has been a devoted hunter and sportsman since his early youth, and his hunting trips for all types of game have been numerous. In the United States and Canada he has taken moose, deer and bear. His first two big game hunts were to Alaska in 1944 and 1949 for bear, wolves and sheep. In 1952, petitioner made his first African safari, employing a professional photographer for the purpose of recording his trip. He had taken motion pictures of previous hunts himself, but considered them amateurish. Upon concluding the 1952 safari, he was disappointed with the results obtained by the photographer he had hired, and at that time made plans to return to Africa after his retirement to make his own films. To this end, petitioner enrolled in adult education photography classes during 1952 and 1953. From these courses and his own self study he developed his technique. In 1956, petitioner filmed three major hunts. One covered a polar bear hunt in Alaska. This was followed by a fishing trip for black *99 marlin off the cost of Peru and a jaguar hunt in the Brazilian jungle. From these trips emerged four of the films in the petitioner's present inventory. After his return from the 1952 safari, petitioner began showing, without fee, his hunting films to various civic, religious and business groups. He became known as a big game hunter and then presented his films for a fee, generally to employee meetings held by various Electro-Motive suppliers. These performances were usually given in a social atmosphere, after a dinner at which the petitioner would be seated at the head table. Petitioner's film presentations for the years involved were as follows: 1957
1958
1959
Fees
Fees
Fees
Number
Received
Number
Received
Number
Received
Suppliers of EMD
4 $800
6
$1,230
3 $350
Clubs, P.T.A.'s
2
100
3 *
525
5
260
Totals
6 $900
9
$1,755
8 $610 In addition to such presentations five free showings were made in 1957 and one each in 1958 and 1959. In 1954, petitioner joined the Adventurers Club and attended meetings regularly. He became acquainted *100 with some big game hunters and spoke with them of the social and commercial aspects of the sport. Petitioner joined the Shikar Safari Club in 1956, and has considered himself as being in the business of lecturing on big game hunting from that time on. He deducted all of his costs as ordinary and necessary expenses in the following amounts: 1957
1958
1959
Income from film presentations
$ 900.00
$ 1,755.00
$ 610.00 *
Other Reported Income
50,862.23
24,378.39
34,219.23
Total Income
$51,762.23
$26,133.39
$34,829.23
Less Expenses
Cost of production of movies (including sa-
fari and traveling expenses)
($29,274.98)
($ 4,874.58)
($10,214.32)
Other expenses
( 252.89)
( 3,279.75)
( 2,623.24)
Adjusted Gross Income
$22,234.36
$17,979.06
$21,991.67 **
At all times petitioner made a full disclosure of income and expenses in his tax returns. The 1957 trip included a two-week safari in French Equatorial Africa in early June, followed by short trips to Brazzaville and Livingston. *101 A photographic safari was conducted in the Johannesburg area at the end of that month. August, September and part of October were spent on three extensive safaris in East Africa, covering Kenya, Uganda and Tanganyika. Petitioner's eldest son, Don, joined them for the Kenya safari, on an admitted pleasure trip. Consequently, his portion of the safari expenses were not included as deductions on petitioner's tax return for 1957. Petitioner continued his journey in late October and early November by touring and photographing various sections of northern and eastern India. The last half of the month and part of December was devoted to a 25-day tiger hunt in the Nagpur section of central India. During the second and third weeks of December petitioner and his younger son toured and photographed the Far East, from India to Bangkok to Hong Kong and on to Tokyo. Various short side trips were made throughout this round-the-world tour that were primarily sightseeing in nature. When petitioner arrived home he began compiling the photographic record of his trip. More than 40,000 feet of film had been exposed, and from this the petitioner fashioned specific films. Such films were processed and *102 accompanying sound tapes were created and put on them, in the same manner as petitioner had done in his earlier 1952 and 1956 films. Professional film processing and sound equipment techniques were used. Petitioner made two more trips during 1959; a three-week return to Alaska and another African safari, where he engaged in a 70-day hunting and photographic trip to Kenya. Petitioner paid $3,580.98 for air transportation for himself and his son to Africa and other places on the 1957 round-the-world trip. In 1959 he paid $2,587.54 for air transportation to Africa for himself and his son via Europe, where they toured many of the capitals and major cities as sightseers. During the years in issue the petitioner used the following method of presentation: At the engagement the petitioner would set up the projector and sound equipment. After he was introduced, he would make a "little talk." He would then indicate to the group of viewers that the film was narrated. When the film was completed he would answer questions from the audience, which ranged in attendance from 40 to 500 persons, or an average of about 160. These presentations usually lasted about one hour. The products of petitioner's *103 hunts are visible in his home, a part of which is open to the public, although not licensed as a museum. He has almost 200 trophies of various game animals. He shows his trophies and films to small groups, such as Boy Scouts, which come to his home. At times he charges a small fee, but the income received therefrom is negligible. One of petitioner's films has been nationally telecast. He was featured on the program, a segment of a series entitled "Bold Journey." He has also made a few appearances on local and area telecasts in Chicago and Los Angeles. Petitioner did not advertise with respect to his films in 1957. However, in 1958 he prepared a form letter and brochure. These were mailed to schools, church organizations and the like, although no mailing list was offered in evidence. Petitioner has not obtained a copyright on his films. Prior to his departure on the 1957 round-the-world trip petitioner did not book engagements to show his films upon his return. Petitioner also incurred losses in 1960, 1961 and 1962, but made a profit of $508.12 in 1963. Ultimate Finding Petitioner has failed to establish that he was engaged in carrying on the trade or business of lecturing *104 on big game hunting adventure films with the intent to earn a profit during the taxable years 1957, 1958 and 1959. Opinion Petitioner claims that he is entitled to deduct the entire amounts he paid for safaris, cameras, film processing, travel and miscellaneous expenses because they were ordinary and necessary under section 162(a), [1] Internal Revenue Code of 1954, to carry on his trade or business of "lecturing on big game hunting." He also claims that he should be allowed to deduct the losses resulting therefrom under section 165. [2] Respondent, on the other hand, contends that petitioner was not carrying on the asserted trade or business during the years in issue. We agree with the respondent. *105 We are satisfied from the evidence presented that petitioner did in fact spend the amounts claimed, although respondent argues otherwise. The history of litigation on the subject of what constitutes a trade or business is indeed long and somewhat confusing. One of the first definitions was that it "is a very comprehensive term and embraces everything about which a person can be employed." Flint v. Stone Tracy, Co., 220 U.S. 107, 171 (1911). This was later narrowed by the Supreme Court when it stated that a trade or business "involves holding ones self out to others as engaged in the selling of goods or services." Deputy v. DuPont, 308 U.S. 499 (1940). Admittedly, neither of these broad statements has proved adequate in resolving the variety of factual situations which have faced the courts. Thus, a number of criteria have been used, depending upon the particular needs of individual cases. Among these criteria are: 1. The number of transactions. Leigh Carroll, 20 B.T.A. 1029, (1930). 2. The time devoted to the activity involved. Willoughby H. Stuart, Jr., 32 B.T.A. 574 (1935). 3. The gross amount of business done, Leigh Carroll, supra. *106 4. The continuity of the business. Glen M. Averill, 20 B.T.A. 1196 (1930). These factors point to one element which the courts have repeatedly found essential, viz., profit motive. To be in a trade or business a taxpayer must intend to carry on his activities for a profit or at least a potential profit. The reasonableness of his intent is not the determining factor. What must be found is a good faith belief that a profit can be made. Doggett v. Burnet, 65 F. 2d 191 (C.A.D.C., 1933). This, of course, indicates a simple solution in theory, but an extremely difficult one in practice. The results have often been as varied as the facts which produced them. Cecil v. Commissioner, 100 F. 2d 896 (C.A. 4, 1939), and Kerns Wright, 31 T.C. 1264 (1959), affd. 274 F. 2d 883 (C.A. 6, 1960). Such an intent can only be inferred from the record as a whole. In the instant case we have on one side the petitioner's uncorroborated testimony that he had an intent to earn a profit and on the other side certain facts which tend to establish the absence of any profit motive. Petitioner did not begin a new activity when he announced *107 that he would become a lecturer on adventure films. He attempted to transform a longstanding hobby into a business venture. Moreover, the inclusion of his younger son as hunter and camera man on the 1957 and 1959 safaris raises a strong inference that petitioner was still pursuing his hobby. In these respects the present case is similar to McLean v. Commissioner, 285 F. 2d 756 (C.A. 4, 1961) affirming a Memorandum Opinion of this Court. In the McLean case the taxpayer had developed the hobby of raising and exhibiting show horses. His activities developed around the interests and ability of his daughter as a horsewoman. Shortly after her marriage, the taxpayer attempted to convert his hobby into a business. His daughter continued to use her admitted skill in training the horses, and the taxpayer set up books and advertised in various trade journals. These activities were held insufficient to establish an actual conversion of the taxpayer's hobby into a new business undertaking, and the taxpayer's expenses were disallowed. The record in this case shows that at least part of the 1957 and 1959 trips were personal in nature and were not devoted to anything more than sightseeing *108 and vacationing. The itineraries show side trips in almost every country visited. This, too, militates against petitioner's alleged profit motive intent. Kerns Wright, supra. Petitioner's testimony regarding his intent to make a profit is seriously weakened, if not completely destroyed, by his failure to present corroborative evidence. He made no attempt to secure a copyright on his films. Only a haphazard effort was made by petitioner at surveying the market for his films to see if there actually was a profit potential. It consisted of some general conversations with fellow club members, none of whom were called to testify. Petitioner made no attempts to secure bookings for the films. He never employed a booking agent. There were no advanced sales. There was no profit analysis. The advertising he did was meager, consisting only of letters and picture brochures sent to various schools, clubs and employee organizations. Petitioner's activities in presenting his adventure films were rather passive. There were few showings. The frequency during the years 1957 through 1959 does not show a continuity and regularity consistent with the operation of a business. The petitioner *109 did not devote much of his time and energy to his alleged occupation. He did not exploit possible markets for his films, nor did he enlist the aid of fellow club members in securing paid lecturing engagements. And his gross receipts were small in relation to the total expenses claimed. After sustaining substantial losses from 1957 through 1962, petitioner did earn a small profit in 1963, a year not before us in this proceeding. Despite petitioner's argument to the contrary, this fact does not offset his failure to show a profit intent for the years in controversy. Wise v. Commissioner, 260 F. 2d 354 (C.A. 6, 1958), affirming a Memorandum Opinion of this Court. We are unable to accept as conclusive the petitioner's testimony with respect to his intention to earn a profit from the alleged business of lecturing and presenting adventure films. His testimony is rebutted by facts and circumstances which are inconsistent with his asserted intention. American Properties, Inc., 28 T.C. 1100 (1957), affd. 262 F. 2d 150 (C.A. 9, 1958). We are convinced that this record establishes that the petitioner was motivated by an abiding self-interest in hunting *110 wild game, traveling abroad and in photography and other matters other than the pursuit of a livelihood and business venture after his retirement from General Motors. The mere hope or expectation expressed by petitioner that his alleged new occupation would result in making a profit is insufficient to support a finding that his activities constituted a trade or business. As we view this record, the film presentations of petitioner's hunting trips were merely incidental to his primary desire to travel and hunt big game. The facts in this case demonstrate that the petitioner's activities were merely a continuation of his lifelong hobby. His active interest was hunting big game and he bent every effort in that direction. The evidence as a under preponderates in favor of the respondent. Since it is our opinion that petitioner's activities in the years before us do not constitute a trade or business engaged in for profit, we hold that the expenditures he incurred are nondeductible personal expenses. Henry P. White, 23 T.C. 90 (1954), affd. 227 F. 2d 779 (C.A. 6, 1955), certiorari denied 351 U.S. 939. Having decided that petitioner was not engaged *111 in a trade or business during the years in issue, we need not consider the secondary and alternative question raised by the parties. Decision will be entered for the respondent. Footnotes
*. Includes a $400 fee received for television presentation.↩
*. The figure was overstated by $50 in the tax return. ↩
**. A capital loss carry-over of $268.19 was not claimed; this figure is consequently overstated by $134.10.↩
1. SEC. 162. TRADE OR BUSINESS EXPENSES. (a) In General. - There shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business, including - * * *↩
2. SEC. 165. LOSSES. (a) General Rule. - There shall be allowed as a deduction any loss sustained during the taxable year and not compensated for by insurance or otherwise. * * *
(c) Limitation on Losses of Individuals. - In the case of an individual, the deduction under subsection (a) shall be limited to - (1) Losses incurred in a trade or business;↩