RITA BEHRING, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 72421. Filed September 23, 1959.

*Henry W. Howard, Esq.*, for the petitioner.
*Leslie T. Jones, Jr., Esq.*, for the respondent.

#### OPINION.

MURDOCK, *Judge:* The Commissioner determined a deficiency of $6,396.23 in the income tax of the petitioner for 1954. The sole issue for decision is whether $6,943.60 expended by the petitioner in 1954 on farmland is deductible under section 175 of the Internal Revenue

Code of 1954. The parties have filed a stipulation of facts and the Commissioner has admitted some allegations of the petition. The facts thus stipulated and admitted are adopted as the findings of fact.

The petitioner, hereafter called Rita, filed her Federal income tax return for 1954 on a calendar year cash basis with the district director of internal revenue at San Francisco, California.

Rita had been engaged for many years in farming about 3,000 acres of land near Chico, California. Her brother gave her in 1947 a life estate in 80 acres of land located in Grant County, Washington. Her brother had acquired the land several years prior to 1947. This land had been farmed in wheat for many years up to about 1924 when wheat farming was abandoned because of declining rainfall in that area and thereafter the land lay fallow. The land was used without charge for grazing purposes by cattle growers in the area with the knowledge and consent of Rita or her brother during the time that each owned it. Such use of unfenced land was customary in the vicinity. The land was not used for grazing purposes by Rita or her brother.

Water became available in sufficient quantities to permit crops to be irrigated on the land in question as a result of the extension of the Grand Coulee Dam Irrigation System into Grant County, Washington, in the early part of 1954. Rita, in order to make the most efficient use of the newly available water, entered into a contract dated March 2, 1954, with Deer Creek Construction Company in connection with the land here in question described therein as "Farm Unit number one hundred twenty-seven (127), Irrigation Block seventy-five (75), Columbia Basin Project, Grant County, State of Washington." Deer Creek agreed "to land level the said premises, land plane the same immediately following conclusion of the aforesaid land leveling, and excavate and embank all necessary and proper head-ditches, laterals, and drains." All the work was to be in accordance with specifications designed by the office of the Grant County Extension Agent. Consideration of $6,773.60 was to be paid, $3,000 upon completion of 50 per cent of the work as determined by the engineering office, $3,000 upon completion of the work and acceptance by the county designing engineer and the remaining $773.60 within 30 days after the initial irrigation of the entire premises and the doing by Deer Creek of any necessary releveling, replaning, or retouching to correct any settling of the premises subsequent to irrigation. Deer Creek warranted that the premises "shall properly water, irrigate and drain by, through and by means of said ditches" and further agreed "to excavate and refill with soil all or any portion of the premises upon which all soil has been removed and bare rock, sand or like matter exposed, or if not exposed, of insufficient depths below the surface to be properly farmed over." The land planing was to be done immediately following land leveling, or, at the option of Rita, "immediately after the first letting

of water thereon, for the purpose of smoothing the same and permitting proper irrigating." Deer Creek "agrees to commence work upon the said premises within thirty (30) days after date of execution hereof."

The work "was undertaken forthwith and completed in accordance with the terms of the contract at a total cost to petitioner of $6,943.60."

Rita had negotiated for a lease of the land and entered into an agricultural lease agreement with a Riggs and Petersen partnership to be effective on March 15, 1954. The lease covered the land here in question. It was "for a period of four (4) crops years, commencing on the 15th day of March, 1954." The rent was in shares of crops raised on the premises during the term of the lease. The lease contemplated the use of irrigation water. Paragraph 21 of the lease included the following: "Lessee covenants that he has examined the said premises and knows the condition thereof and accepts said premises as the same are now."

Paragraph 7 of the stipulation is as follows:

The lessees entered upon the land on March 15 and forthwith planted it to beans, corn, and alfalfa hay as rapidly as the condition of the land made possible. This activity occurred during and after completion of the leveling and ditching operations referred to in the contract marked as Exhibit 1.

Rita on her 1954 return claimed a deduction of $6,943.60 as an expense in computing net income from farming. The Commissioner, in determining the deficiency, disallowed that deduction with the explanation:

Deduction claimed as soil conservation expenditure in the amount of $6,943.60 has been disallowed since it has been determined that the property involved in the land levelling was not land used in farming.

Section 175 of the Internal Revenue Code of 1954 is entitled "Soil and Water Conservation Expenditures" and provides in paragraph (a):

In General.—A taxpayer engaged in the business of farming may treat expenditures which are paid or incurred by him during the taxable year for the purpose of soil or water conservation in respect of land used in farming, or for the prevention of erosion of land used in farming, as expenses which are not chargeable to capital account. The expenditures so treated shall be allowed as a deduction.

The deduction "shall not exceed 25 percent of the gross income derived from farming during the taxable year." No claim is made that this limitation has any application in this case. The term "expenditures which are paid or incurred by him during the taxable year for the purpose of soil or water conservation in respect of land used in farming," is defined as:

expenditures paid or incurred for the treatment or moving of earth, including (but not limited to) leveling, grading and terracing, contour furrowing, the construction, control, and protection of diversion channels, drainage ditches, earthen dams, watercourses, outlets, and ponds, the eradication of brush, and the planting of windbreaks. * * *

But the term does not include the cost of structures, appliances, or facilities subject to depreciation. No claim is made that this exclusion has any application in this case. The term "land used in farming" is defined as:

land used (before or simultaneously with the expenditures described in paragraph (1)) by the taxpayer or his tenant for the production of crops, fruits, or other agricultural products or for the sustenance of livestock.

The Commissioner's regulations on the 1954 Code in section 1.175–4 deal with the phrase "land used in farming" contained in section 175. That section contains the following:

The land must be or have been so used either by the taxpayer or his tenant at some time before, or at the same time as, the taxpayer makes the expenditures for soil or water conservation or for the prevention of the erosion of land. * * *

The regulation then contains a discussion of newly acquired land including the following:

On the other hand, if the land is being initially prepared by the taxpayer in order to make it suitable for a particular farming use other than the one to which the land was devoted prior to its acquisition by the taxpayer, such land is not considered to be "land used in farming" at the time of its preparation.

The regulation gives three illustrative examples. The first involves a purchase by A of an operating farm suitable for his particular farming use without the necessity of making initial preparatory expenditures but prior to the next farming season makes soil and water conservation expenditures which he may deduct under section 175. The second relates to the acquisition by C of uncultivated land which he intends to develop for farming and prior to putting this land into production it is necessary for him to clear brush and make other soil and water conservation expenditures. The example states that the land is not used in farming at the time that such expenditures are made and C may not deduct the expenditures under section 175. D in the third example acquires land being used for grazing cattle which he intends to use for a citrus grove and in order to make the land suitable for his purpose he makes soil and water conservation expenditures. Again, it is held that the land was not used in farming at the time the expenditures were made but is being initially prepared for use as a citrus grove and the expenditures are not deductible.

The land here involved was not newly acquired by Rita and none of the examples applies to this case. The record here shows that the land in question was previously used for crop farming but had been

lying fallow for a number of years and had not been used by Rita or her brother for farming. However, Rita leased the land for crop farming, a use similar to that for which it had been used previously. The lessees examined the land and found it suitable for their purposes. There is nothing to suggest that this land was not ready for farming on March 1, 1954. Thus, this is not a case where the land has to be developed for farming and the expenditures here were not for the initial preparation of the land for agricultural purposes. The Commissioner concedes that a farmer who decides to switch from dry farming to wet farming by installing irrigation facilities can deduct the expenditures under section 175. The expenditures here in question were solely for the purpose of switching this land from dry farming land to wet farming land by the installation of irrigation facilities. It is true that Rita had not used the land for any farming purpose, but it is unfair to assume that the expenditure was for the initial preparation of the land for farming. The tenants covenanted in the lease to the effect that the "premises as the same are now" were satisfactory for their farming uses. The work for which the amount in question was paid was solely for the purpose of providing water for the farmland on which farming had ceased because of the lack of water.

However, the land here in question was not used before March 1954 by the taxpayer or her tenant for the production of crops, fruits, or other agricultural products or for the sustenance of livestock. Rita permitted persons in the vicinity of the land to use it without charge for grazing their cattle, but that use is not within the meaning of the statute. The real question is whether Rita or her tenant used this land for the production of crops "simultaneously with the expenditures" here in question. The sudden availability of water enabled Rita to lease this land for farming purposes and caused her to make the necessary expenditures. The stipulation is that the lessees entered upon the land on March 15, 1954, and forthwith planted it to crops as rapidly as the conditions of the land made possible. Rita's tenants thus took possession and began operations before any water was ever brought through the irrigation ditches to the land and were in possession at the same time that the conservation improvements were being made. The words "at the same time" are used in the regulation. The conservation work was a single integrated plan for the entire 80 acres designed by and requiring the approval of county officials, as is clear from the contract. A fair inference from the entire record is that the condition of some parts of the land made the planting of the crops possible as soon as the tenant took possession.

The Commissioner seems to have some notion that the 80 acres are not to be considered as a unit and that the farming and conservation activities must be going on simultaneously on the same spot. Con-

gress did not so intend. The 80 acres were leased as a unit and the improvements were to those 80 acres as a unit. It is entirely possible that the conservation activities did not require disturbance of the soil on substantial portions of the 80 acres which the lessee first planted as stipulated. The Commissioner concludes his brief by stating that "none of the land comprising the eighty acres in this case was used for agricultural purposes until *after* the development work; not before or simultaneously with petitioner's expenditure." This is directly contrary to his stipulation that the lessee's activity in planting three crops "occurred during and after completion of the leveling and ditching operations" and to his statement in his brief that "[p]art of the land was under cultivation by them [the lessees] while other parts were still being improved."

It is not easy to discern the intent of Congress with respect to a case like this from the words used in section 175 or from the legislative history of the provision. It seems reasonably clear, however, that expenditures to prepare previously uncultivated land for farming were not intended to be deducted, but it is difficult to see what Congress meant by using the word "simultaneously" if what happened in this case is not within the intended meaning. Cf. *J. H. Collingwood*, 20 T.C. 937. The Commissioner has not given any reasonable explanation of why the provisions of section 175 should not apply in this case. He stated in his brief that "the case [was] submitted under a full stipulation of facts" and it must be assumed that there are no additional facts which would support his position. The Court holds on the present record for the petitioner.

Reviewed by the Court.

*Decision will be entered under Rule 50.*