George T. McLEAN and Amelia G. McLean, Petitioners,

v.

COMMISSIONER OF INTERNAL REVENUE, Respondent.

No. 8234.

United States Court of Appeals Fourth Circuit.

Argued Jan. 17, 1961.

Decided Jan. 23, 1961.

T. Howard Spainhour, Norfolk, Va., for petitioners.

C. Guy Tadlock, Atty., Dept. of Justice, Washington, D. C., (Charles K. Rice, Asst. Atty. Gen. and Lee A. Jackson, Atty., Dept. of Justice, Washington, D. C., on brief), for respondent.

Before SOBELOFF, Chief Judge, and HAYNSWORTH and BOREMAN, Circuit Judges.

PER CURIAM.

Disallowing the taxpayers' claimed deduction for a loss of $12,548.98 sustained in the operation of a horse farm in the year 1953, The Commissioner of Internal Revenue determined a tax deficiency against the taxpayers of $7,929.86. The case is before us on the taxpayers' petition for review.

The claim for the deduction is based upon the alleged operation of the farm as a business in 1953. While the Commissioner recognized that losses incurred in the business of training, breeding and showing horses would be deductible, he determined that in 1953 the activities in question were carried on not as a business for gain, but substantially in the same way and for the same purposes as they had been for many years, when admittedly they were a hobby maintained for the pleasure of the taxpayers and their family. Mr. McLean is and for many years has been a man of large means, deriving considerable income from a successful construction business, as a dealer in building materials, ready-mix concrete and asphalt paving, as well as other businesses. During the years prior to 1953, Mr. McLean kept a number of fine show horses on his farm, which his daughter frequently exhibited in major horse shows, winning numerous prizes and attaining a reputation as an outstanding rider.

There is little dispute about the primary evidentiary facts as found by the Tax Court, but the parties differ sharply as to the inferences to be drawn therefrom. In that court Mr. McLean testified that late in 1952, realizing that his

son-in-law would soon return from military service and that his daughter's interest in exhibiting horses would likely decline, he decided to discontinue the raising and showing of horses as a hobby. He was convinced, however, that his past experience could be turned to profit in the commercial buying, selling and training of horses. When he discussed this possibility with friends and acquaintances, they confirmed his confidence. In the earlier years he had conducted the farm with slight regard to the question of expense, keeping no records whatever except his check stubs, but he undertook late in 1952 to establish a set of books and records as of January 1, 1953. He further testified that he decided to breed horses regularly rather than occasionally, and took a number of steps to cut expenses and increase his income from the horse farm, such as boarding horses for fees and raising feed and bedding for the animals on the farm. He stressed that he advertised the farm in show horse journals. He admitted, however, that he made no purchases or major sales in 1953.

The Tax Court, in evaluating the testimony, pointed out that the advertising material contained no offers of show horses for sale and was not substantially different from the publicity McLean's farm had sought and paid for in the past when the farm was operated as a hobby. The Tax Court was unimpressed by the testimony of revenues from boarding horses, which amounted to only $1,100.00 in the tax year—a small amount in relation to the total expenses—and there was no comparison between that and similar income in earlier years. In other respects, too, the Tax Court found the proof as a whole deficient to establish the actual conversion of the farm into a business enterprise. It was pointed out that the daughter's interest in the horse farm in fact did not abate, and that in 1953 her activities were not substantially different from the past. On the other hand, Mr. McLean testified that it would have been foolish for him to reject his daughter's volunteered assistance in his new commercial enterprise, since she was a recognized expert in handling show horses. Essentially there was presented an issue of fact.

 Whether the 1953 activities were merely a continuation of the long-established hobby or a new business undertaking, was a question of intent to be determined by the trier of fact. The circumstances were fully reviewed by the Tax Court Judge (George T. McLean and Amelia G. McLean, TCM 1960-128), and they did not persuade him that McLean carried out an intention to run the horse farm as a business in that year. We cannot say that the ultimate finding of fact made by the Tax Court is clearly erroneous, and its decision is, accordingly,

Affirmed.