
**H. L. HERNDON and Margaret M. Herndon, Plaintiffs,**

v.

**The UNITED STATES of America, Defendant.**

**Civ. A. No. 7417.**

United States District Court
E. D. South Carolina,
Orangeburg Division.

Feb. 8, 1962.

Crum & Crum, Denmark, S. C., for plaintiffs.

Terrell L. Glenn, U. S. Atty., Columbia, S. C., Leon W. Vaseliades, Atty. Dept. of Justice, Louis F. Oberdorfer, Asst. Atty. Gen., Washington, D. C., for defendant.

WYCHE, Chief Judge.

The facts in this case have been stipulated and are hereby adopted as the Findings of Fact of this Court.

Plaintiffs purchased a farm in December, 1956, and in the years 1957, and 1958, expended sums of money in establishing Coastal Bermuda Grass thereon, which sums the Commissioner disallowed as a deduction under Section 175 of the Internal Revenue Code of 1954, 26 U.S.C.A. § 175, as amended.

All requirements of Section 175 as to deductibility are beyond dispute in this case, with the exception of the two issues involved in this controversy, namely, (1) Did the taxpayer H. L. Herndon establish the Coastal Bermuda Grass on "land used in farming" as the term is used in Section 175; and (2) Did the taxpayer H. L. Herndon establish the Coastal Bermuda Grass for the "purpose of soil or water conservation or the prevention of

erosion" as that term is used in Section 175.

"The term 'land used in farming' means land used (before or simultaneously with the expenditures described in paragraph (1)) by the taxpayer or his tenant for the production of crops, fruits, or other agricultural products or for the sustenance of livestock." 26 U.S.C.A. § 175(c) (2).

Treasury Regulations on Income Tax (1954 Code), Sec. 1.175–4(a) (2), provides in part: "The land must be or have been so used either by the taxpayer or his tenant at some time before, or at the same time as, the taxpayer makes the expenditures * * *. The taxpayer will be considered to have used the land in farming before making such expenditures if he or his tenant has employed the land in a farming use in the past. * * *"

The land on which the taxpayer H. L. Herndon established the 1958, Coastal Bermuda Grass was used by him the year previous for the production of crops and/or the sustenance of livestock. As such, the taxpayer before the establishment of the 1958 Grass had employed the land in a farming use in the past and the land on which the 1958 Grass was established was "land used in farming" at the time of the 1958 establishment. Neither Section 175 nor the Regulation requires that land which has been used before by the taxpayer for any of the permissible purposes, that that same use must be continued in order to have the land classified as "land used in farming".

The land on which the taxpayer established the 1957 Coastal Bermuda Grass was "land used in farming" at the time of the 1957 expenditure. In 1957, the taxpayer produced crops on certain fields of his farm simultaneously with his establishment of Coastal Bermuda Grass on others, all of which land had previously been under cultivation by predecessors in title, which was done pursuant to a single, integrated Conservation Plan prepared by the local Soil Conservation District authorities.

In the case of Behring v. Commissioner, 32 T.C. 1256, Rita Behring had a Conservation Plan prepared of her entire eighty acre farm and pursuant thereto was making conservation improvements at the same time as she was putting the land into production, and the Court said: "The Commissioner seems to have some notion that the 80 acres are not to be considered as a unit and that the farming and conservation activities must be going on simultaneously on the same spot. Congress did not so intend. The 80 acres were leased as a unit and the improvements were to those 80 acres as a unit. It is entirely possible that the conservation activities did not require disturbance of the soil on substantial portions of the 80 acres which the lessee first planted * * *."

The Regulations are silent on "simultaneous" use except the statement in the above-quoted portion of Regulation 1.175–4(a) (2).

The Commissioner lays stress on the following portion of Regulation 1.175–4 (a) (2): "If the expenditures are made by the taxpayer in respect of land newly acquired from one who immediately prior to the acquisition was using it in farming, the taxpayer will be considered to be using the land in farming at the time that such expenditures are made, if the use which is made by the taxpayer of the land from the time of its acquisition by him is substantially a continuation of the use which was made of the land immediately prior to its acquisition. On the other hand, if the land is being initially prepared by the taxpayer in order to make it suitable for a particular farming use other than the one to which the land was devoted prior to its acquisition by the taxpayer, such land is not considered to be 'land used in farming' at the time of its preparation."

The above refers only to situations where one acquires land and establishes conservation measures prior to producing crops on the land. It does not refer to situations where one acquires land and produces crops prior to establishing conservation measures, or simultaneously

does both, however soon after acquiring the land, as Section 175(c)(2) and that portion of the Regulation which states: "The taxpayer will be considered to have used the land in farming before making such expenditures if he * * * has employed the land in a farming use in the past", neither provides for such a restriction as to a taxpayer having substantially to continue a predecessor's use where he has used the land before or simultaneously for farming purposes. All three examples given in Regulation 1.175–4(b) deals with situations where one acquires land and undertakes to construct terraces and the like prior to producing crops or sustaining livestock on the land.

In Eidson v. United States, 8 A.F.T.R. 2d 5495, in determining that Top O' World Farms' land was "land used in farming", the Court states that it was "engaged in the sustenance of livestock on the land on which the described levelling * * * (was) incurred, through a tenant, both prior to the time of levelling and grading as well as at the time of levelling and grading." This, without more, would make that land "land used in farming".

As to the second question here involved, did the taxpayer establish the Coastal Bermuda Grass for the "purpose of soil or water conservation or the prevention of erosion", Regulation 1.175–2(b)(2) states, in part: Section 175 "would apply to expenses incurred to produce vegetation primarily to conserve soil or water or to prevent erosion. Thus, for example, the method would apply to such expenditures as the cost of dirt moving, lime, fertilizer, seed and planting stock used in gulley stabilization, or in stabilizing severely eroded areas, in order to obtain a soil binding stand of vegetation on raw or infertile land." Coastal Bermuda Grass is a soil binding stand of vegetation. The Regulation exemplifies that a soil binding stand of vegetation does come within the contemplation of Section 175, but, by doing so, it does not restrict the deductibility of the expense of establishing that vegetation only to

severely eroded areas. Section 175 and the Regulations thereunder contemplate, among other things, the deductibility of expenses undertaken to prevent land from becoming eroded, if there is danger of such erosion.

A taxpayer must not only establish such vegetation but must also establish it primarily for a conservation or erosion prevention purpose, in order to deduct the expense under Section 175.

The Edisto Soil Conservation District was called upon to make a Conservation Plan of taxpayer's land and made a complete analysis of the land and found certain fields to be of a moderate to a deep phase sand, infertile and subject to leaching and wind erosion and one field of approximately twelve acres to be slightly thirsty, sloping land with slight to moderate erosion present and in those fields recommended the establishment of Coastal Bermuda Grass, which was an erosion prevention measure. Thereafter the taxpayer established Coastal Bermuda Grass.

The prevention of erosion was first established for the fields in question and the recommendation by the Soil Conservation District that Coastal Bermuda Grass be planted to prevent erosion followed and that determination controlled the fact that cattle should be raised and grazed on the fields in question.

"The ruling of one governmental administrative agency made for a certain purpose cannot and does not control that of another governmental agency made for an entirely different purpose under another Act of Congress." Emmetsburg Production Credit Association v. Halpin, 5 A.F.T.R.2d 583, 590. A conclusion by the Department of Agriculture that the establishment of a certain practice is for the purpose of soil conservation as is the case here does not mean that that practice is for the purpose of soil conservation under Section 175. Nevertheless the factual findings of United States Department of Agriculture soil experts as to soil types, soil needs and the like are proper evidence

before me in determining whether or not a land practice is for the purpose of soil or water conservation or for the prevention of erosion as those terms are used in Section 175.

 It is, therefore, my opinion that the taxpayer H. L. Herndon was engaged in the business of farming in the years 1957, and 1958, and his expenditures in the said years in establishing Coastal Bermuda Grass on his farm were for the purpose of soil or water conservation in respect of land used in farming or for the prevention of erosion of land used in farming.

Plaintiffs are therefore entitled to judgment in an amount to be computed by the Internal Revenue Service in accordance with findings of fact and conclusions of law herein, together with interest thereon.