GLORIA B. and PHILIP F. ZIMMERMANN, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Zimmermann v. Commissioner
Docket No. 1088-75.
United States Tax Court
T.C. Memo 1976-123; 1976 Tax Ct. Memo LEXIS 282; 35 T.C.M. (CCH) 559; T.C.M. (RIA) 760123; April 21, 1976, Filed Philip F. Zimmermann, pro se. David W. Johnson, for the respondent. FEATHERSTON
MEMORANDUM FINDINGS OF FACT AND OPINION FEATHERSTON, Judge: Respondent determined a deficiency in the amount of $2,460.12 in petitioners' Federal income tax for 1971. Concessions having been made by petitioners, the following issues remain for resolution: 1. Whether certain payments received in 1971 by petitioner Gloria B. Zimmermann qualify as a fellowship or scholarship grant within the meaning of section 117; [1]/ and 2. Whether petitioners are entitled, under section 162(a), section 212, or section 165(c), to deduct certain expenses incurred by petitioner Philip F. Zimmermann in motorcycle racing. FINDINGS OF FACT General
Petitioners Gloria B. Zimmermann (hereinafter Gloria) and Philip F. Zimmermann (hereinafter *284 Philip) resided in Bethany, Connecticut, at the time their petition was filed. They filed a joint Federal income tax return for 1971 with the Internal Revenue Service Center, Andover, Massachusetts. 1. The Section 117 Exclusion
In 1965 Gloria received a doctor of medicine degree from the medical school at the University of Santa Thomas in Manila, Philippine Islands. She served as an intern from 1966 to 1967 and as a resident in adult psychiatry from 1967 to 1970 at what is now known as Westchester Medical Center in New York. From July 1970 through June 1972, Gloria was a resident in child psychiatry at Roosevelt Hospital. As a resident at Roosevelt Hospital, Gloria had routine working hours of 9 a.m. to 5 p.m., five days each week. She was given a caseload of about five patients. Her responsibilities included interviewing the patients, making diagnoses of their problems, consulting with their parents, prescribing and administering a program of treatment, and keeping the medical records of her patients. Gloria's work was subject to the supervision of staff physicians who would discuss with her the patients' problems and proposed treatment. She was often required to *285 present a discussion of her cases to a team of mental health specialists, e.g., social workers, psychologists, and psychiatrists, all of whom would give their views on the cases. Gloria also attended conferences and lectures dealing with cases handled by other physicians. Her duties and responsibilities with respect to her caseload were similar to those of staff psychiatrists except that they handled more patients. Gloria spent many hours each week doing research and study in order to prepare diagnoses and treatment plans for her patients. The program in which she was a participant was similar to that of other residencies in medical specialties. During 1971 Gloria received a stipend totaling $12,675.13 from the hospital from which $1,817.46 was withheld for Federal income tax. The hospital provided Gloria with medical malpractice insurance and a 3-week paid vacation each year. On their joint 1971 Federal income tax return, petitioners excluded as a fellowship or scholarship grant $3,600 of the payments Gloria received from Roosevelt Hospital. Respondent determined that the entire amount Gloria received constituted compensation and was not excludable from petitioners' gross *286 income. 2. The Motorcycle Racing Deduction
During 1971 Philip was employed full time by the New York City Police Department. He spent many of his weekends participating in motorcycle racing. He entered approximately 13 motorcycle races conducted by the Association of American Motorcycle Road Racers on five or six weekends during the year. In most of these races, prize money was awarded to the top finishers, the first place prize ranging from $150 to nearly $2,000. Those who finished second, third, or fourth received substantially smaller cash prizes, sometimes as low as $10. Philip never won a race offering prizes and earned no income from this activity in 1971, 1972, or 1973. Philip never made a study of his prospects of realizing a profit from racing motorcycles, and he rode motorcycles for pleasure as well as in racing. In connection with the use of his motorcycles, Philip expended the following amounts in 1971: Purchase of motorcycles
$2,175.00
Trailer hitch, tools, protective
equipment, and labor
641.31
License and sales tax
84.25
Entry fees and competition license
125.00
Motorcycle trailer
175.00
Total
$3,200.56
On their joint *287 Federal income tax return for 1971, petitioners deducted $4,207 [2]/ as expenses associated with Philip's motorcycle racing. ULTIMATE FINDINGS OF FACT No part of the payments received by petitioner Gloria B. Zimmermann from Roosevelt Hospital constituted a fellowship or scholarship grant within the meaning of section 117. The expenses incurred by petitioner Philip F. Zimmermann for motorcycle racing were not incurred in a trade or business, to produce income, or in a transaction entered into for profit. OPINION 1. The Section 117 Exclusion
Section 117(a)(1) [3]/ provides that gross income does not include amounts received as a fellowship or scholarship grant at an educational institution. If an individual is not a candidate for a degree, the exclusion is limited to $3,600 per taxable year, sec. 117(b)(2)(B). *288 The section does not apply to payments which constitute compensation for employment services or services subject to the direction of the grantor of the payments, sec. 1.117-4, Income Tax Regs. See Stephen L. Zolnay,49 T.C. 389 (1968); Elmer L. Reese, Jr.,45 T.C. 407, 411 (1966), affd. per curiam 373 F.2d 742 (4th Cir. 1967). Petitioners seek to exclude $3,600 of the amount Gloria received *289 from Roosevelt Hospital during 1971, relying upon section 117. Respondent maintains that the disputed payments did not constitute a fellowship or scholarship grant but were compensation for Gloria's services to the hospital. We hold for respondent. This case is another one in a long line dealing with the applicability of section 117 to payments to resident physicians. With few exceptions, the payments have been held to be "compensation for past, present, or future employment services," not excludable from gross income under section 117; sec. 1.117-4(c)(1), Income Tax Regs. See, e.g., Geral W. Dietz,62 T.C. 578 (1974); Frederick Fisher,56 T.C. 1201, 1211-1212 (1971), and cases cited therein. Compare George L. Bailey,60 T.C. 447 (1973); Frederick A. Bieberdorf,60 T.C. 114 (1973). Petitioners have not demonstrated that a different result is justified in this case. Gloria worked a full five-day week for the hospital on an ordinary 9 a.m. to 5 p.m. schedule. As detailed in our Findings, her work included interviewing patients, preparing diagnoses and reports to mental health teams, and preparing and executing *290 treatment plans for the patients. The hospital provided her with a constant caseload of about five patients, and the manner in which she handled the caseload was similar to that of the staff psychiatrists. Although Gloria had primary responsibility for the treatment of her patients, her work was subject to the supervision of the staff physicians. These facts persuade us that Gloria's services benefitted the hospital substantially and that the payments she received were compensation for those services. See Jerry S. Turem,54 T.C. 1494, 1505 (1970). It is true that Gloria's work was valuable experience, but this does not convert compensatory payments into fellowship or scholarship grants. See Aloysius J. Proskey,51 T.C. 918, 925 (1969). We hold that no part of the payments falls within the scope of section 117. The payments must be included in petitioners' gross income. 2. The Motorcycle Racing Deduction
Petitioners deducted $4,207 [4]/ as expenses incurred by Philip in his participation in motorcycle racing. Petitioners may deduct these expenses only if they were paid or incurred in carrying on a trade or business, sec. 162(a), *291 [5] or for the production of income, sec. 212, [6] or if the payments constituted losses from transactions entered into for profit, sec. 165(c).[7] Under these Code sections, the item is deductible only if the enterprise was undertaken with a bona fide profit motive. Margit Sigray Bessenyey,45 T.C. 261, 273 (1965), affd. 379 F.2d 252 (2d Cir. 1967), cert. denied 389 U.S. 931 (1967); Lamont v. Commissioner,339 F.2d 377, 380 (2d Cir. 1964), affg. a Memorandum Opinion of this Court. *292 In ascertaining whether Philip was engaged in the trade or business of motorcycle racing, the touchstone is his motive. If actuated by a profit motive, the expectation of profit need not be reasonable nor must profit be realized immediately. Hirsch v. Commissioner,315 F.2d 731, 736 (9th Cir. 1963), affg. a Memorandum Opinion of this Court; Lincoln Adolphus Bolt,50 T.C. 1007, 1013 (1968); Henry P. White,23 T.C. 90 (1954), affd. per curiam 227 F.2d 779 (6th Cir. 1955), cert. denied 351 U.S. 939 (1956). The Court will not substitute its judgment for that of the taxpayer as to the prospects of financial success but will limit its inquiry to why the taxpayer incurred the disputed expenses. The issue is factual, and its resolution depends upon all the facts and circumstances of each case. Morton v. Commissioner,174 F.2d 302, 303 (2d Cir. 1949), affg. a Memorandum Opinion of this Court, cert. denied 338 U.S. 828 (1949). As we view the evidence, it will not support a finding that Philip undertook his racing activities with the requisite aim of making a profit. The most realistic *293 inference is that racing was mainly a form of recreation or amusement, the expenses of which are not deductible, sec. 262. Philip entered approximately 13 races on about five weekends throughout 1971. Most of these races offered prizes to top finishers, but the prizes varied from as low as $10 for fourth place finish to $150 to $200 for a first prize in some races and as high as over $1,500 in at least one race. We have no evidence of how many of the races offered large prizes, and thus we have no way of determining if, assuming he won all those races, Philip would have earned enough to cover his expenses. But Philip won no prizes in that year or in any of the three years in which he participated. Yet, he continued to accumulate expenses for entry fees, repairs, and motorcycle equipment. While continued losses do not necessarily show petitioner had no profit motive, they raise doubts that making a profit was his real motive in incurring the expenses. Margit Sigray Bessenyey,45 T.C. at 273-274. That is especially true where, as in this case, the activity in issue is one in which a participant ordinarily engages for pleasure rather than profit. Philip *294 did not make any study of the profit potential of his activities; he did not attempt in a pragmatic fashion to relate his expenses to his potential income; and apparently he did not conduct the activity in an organized, systematic fashion.All these factors indicate the absence of a profit motive.See Francis X. Benz,63 T.C. 375, 385 (1974). According to his own admission, Philip rode motorcycles for recreation or amusement prior to, during, and after 1971. While this would not preclude a finding that he was engaged in a trade or business, see McLean v. Commissioner,285 F.2d 756 (4th Cir. 1961), affg. per curiam a Memorandum Opinion of this Court, it militates against such a conclusion. To reflect the foregoing, Decision will be entered for the respondent.
Footnotes
1. /↩ All section references are to the Internal Revenue Code of 1954, as in effect during the tax year in issue, unless otherwise noted.
2. /↩ Philip testified at trial that the $4,207 deduction claimed as motorcycle racing expenses on the face of petitioners' 1971 tax return should have been reported as $3,360, the total of the itemized expenditures reflected on the "Explanation of Items" attachment to their return. He stated that the discrepancy was due to a mistake in arithmetic.
3. /Sec. 1.117-4(c)(1), Income Tax Regs., states, for the purpose of sec. 117: Sec. 1.117-4 Items not considered as scholarships or fellowship grants. (c) Amounts paid as compensation for services or primarily for the benefit of the grantor. (1) Except as provided in paragraph (a) of section 1.117-2, any amount paid or allowed to, or on behalf of, an individual to enable him to pursue studies or research, if such amount represents either compensation for past, present, or future employment services or represents payment for services which are subject to the direction or supervision of the grantor. The validity of these regulations was upheld by the Supreme Court in Bingler v. Johnson,394 U.S. 741↩ (1969).
4. /↩ As stated in our Findings, petitioners admit that this $4,207 figure is erroneous and now concede that the correct figure does not exceed $3,360. But see our Findings as to amount. 5. SEC. 162. TRADE OR BUSINESS EXPENSES.
(a) In General. -- There shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business, * * * ↩
6. SEC. 212. EXPENSES FOR PRODUCTION OF INCOME.
In the case of an individual, there shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year-- (1) for the production or collection of income; * * *↩
7. SEC. 165. LOSSES. (c) Limitation on Losses of Individuals.-- In the case of an individual, the deduction under subsection (a) shall be limited to-- * * *
(2) losses incurred in any transaction entered into for profit, though not connected with a trade or business; * * *↩