AMFAC, INC., Petitioner-Appellant,

v.

COMMISSIONER OF INTERNAL
REVENUE, Respondent-Appellee.

No. 78–2918.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted July 11, 1980.

Decided Aug. 21, 1980.

Richard L. Griffith, Cades, Schutte, Fleming & Wright, Honolulu, Hawaii, for petitioner-appellant.

Gayle P. Miller, Washington, D.C., argued, Libero Marinelli, Jr., Washington, D.C., on brief, for respondent-appellee.

Before TRASK and CHOY, Circuit Judges, and SMITH,* District Judge.

* The Honorable Russell E. Smith, Senior United States District Judge for the District of Montana, sitting by designation.

1. The findings are supported by the evidence.

RUSSELL E. SMITH, District Judge:

The sole question in this case is whether certain expenditures made by Puna Sugar Co., Ltd. (Puna), a subsidiary of the petitioner, Amfac, Inc., are deductible under Section 175(a) of the Internal Revenue Code (26 U.S.C. § 175(a)). The Tax Court held an evidentiary hearing, made findings of fact, and concluded that the expenses were not deductible. We affirm.

The record shows that Puna has been growing sugar cane on the Island of Hawaii since about 1900. In 1967 it made improvements in its sugar mill which substantially increased its capacity. In 1968, to use that added refining capacity, Puna adopted a plan to increase its sugar cane production by bringing additional land into cultivation. The land involved was all owned or leased by Puna. To prepare for cultivation, the land was cleared; high, rocky spots were knocked down; topsoil was removed from the low spots and stockpiled; the low spots were filled with both the debris from the clearings and the excess material from the high spots; and the whole was then covered with topsoil, leveled, and shaped. The drainage was improved by ripping, drilling, and blasting in non-water-permeable rock. As to the three fields in controversy here, the Tax Court, 70 T.C. 305, specifically found: [1]

Field 391 covers 319.364 acres. Of the total acreage 79 acres were improved in 1968. The work area [2] covered 84.8 acres. The contemporary records [3] of Puna do not reflect cultivation of sugar cane in the work area prior to 1969. Planting of the work area commenced in January of 1970 and continued through February of 1970. The work area was planted in increments when it was ready for cultivation.

Field 090 covers 451.743 acres. Of the total acreage 252 acres had intermittently been cultivated in sugar cane by Puna.

2. The work area is the area in which work was done in the year 1969.

3. Records going back to the early 1930's.

An additional 68 acres were improved in 1968 at a cost of $31,962.00. The work area covered the remaining 131 acres. The contemporary records of Puna do not reflect cultivation of sugar cane in the work area prior to 1969. Planting of the work area commenced in July of 1968 and continued through November of 1969. The work area was planted in increments as it was ready for cultivation.

Field 151 covers 297 acres. Prior to and during 1969 sugar cane was being cultivated in this field in a 5 acre experimental plot. The work area covered the remaining 292 acres. The contemporary records of Puna do not reflect cultivation of sugar cane in the work area prior to 1969. Planting of the work area commenced in September of 1969 and continued through February of 1970. The work area was planted in increments as it was ready.

Section 175 reads in pertinent part:

(a) In general.—A taxpayer engaged in the business of farming may treat expenditures which are paid or incurred by him during the taxable year for the *purpose of soil or water conservation* in respect of land used in farming, or for the prevention of erosion of land used in farming, as expenses which are not chargeable to capital account. The expenditures so treated shall be allowed as a deduction.

.    .    .    .    .

(c) Definitions.—For purposes of subsection (a)—

(1) The term "expenditures which are paid or incurred by him during the taxable year for the purpose of soil or water conservation in respect of land used in farming, or for the prevention of erosion of land used in farming" means expenditures paid or incurred for the treatment or moving of earth, including (but not limited to) leveling, grading and terracing, contour furrowing, the construction, control, and protection of diversion channels, drainage ditches, earthen dams, watercourses, outlets, and ponds, the eradication of brush, and the planting of windbreaks.

.    .    .    .    .

(2) The term "land used in farming" means land used (*before* or *simultaneously* with the expenditures described in paragraph (1)) by the taxpayer or his tenant for the production of crops, fruits, or other agricultural products or for the sustenance of livestock.

(Emphasis added.)

The conflict between the parties resolved by the Tax Court centers around the question: Was the land used for farming before or simultaneously with the expenditures?

THE SIMULTANEOUS USE ISSUE:

■ The congressional use of the word "simultaneously" poses problems because some of the kinds of conservation work mentioned in Section 175(c)(1), such as leveling, grading, terracing, and contour furrowing, cannot be done while the land is being farmed. On the other hand, such work as the construction of drainage ditches or irrigation canals, or the planting of windbreaks, could be accomplished on a small part of a given piece of land while the greater part of it was being farmed. We think that the problem posed by the use of the word "simultaneously" should be resolved in the light of the congressional purpose to be accomplished.

■ Congress employed the term "used in farming" and defined it to distinguish between expenses incurred in bringing wild, uncultivated land into initial production and expenses incurred to conserve soil and water on already cultivated land.[4] In our opinion, if it can be said as an ultimate[5] fact,[6] that the purpose for which the work

4. *See* C.F.R. § 1.175–4, Example (2).

5. *See* Mertens, Law of Federal Income Taxation, vol. 9, ¶ 51.24 (1977).

6. It is a fact problem. *See McManus v. CIR*, 583 F.2d 443, 446 (9th Cir. 1978), *cert. denied*, 440 U.S. 959, 99 S.Ct. 1501, 59 L.Ed.2d 773 (1979); *Austin v. CIR*, 298 F.2d 583, 584–85 (2d Cir. 1962); *McLean v. CIR*, 285 F.2d 756, 757 (4th Cir. 1961).

is done is that of conserving farm land as distinguished from bringing uncultivated land into production, then the expenses are deductible; otherwise they are not.

In this case the record shows that in Field 151, consisting of 297 acres, sugar cane had been cultivated prior to 1969 on an experimental five-acre plot, and in Field 090, containing 451.743 acres, sugar cane had been grown intermittently over the years on 252 acres, and 68 acres were planted in the year 1968. Since the land on which the work was done was planted in increments,[7] some of the increments were being farmed in 1969 while other work was being done on other land in the work areas. However, the planting always followed the completion of the work, and the performance of the work on a given piece of land did not occur simultaneously with the farming of that same land.

■■■ The taxpayer urges, however, that, if a portion of an appropriate unit is farmed, then the use of that portion characterizes the use of the whole unit; that as a practical matter one cannot level, grade, or terrace a piece of land and at the same time farm it; that the word "simultaneously" has no meaning unless it describes a situation in which one part of an area is farmed and some other part improved. We do not agree. As previously indicated, some conservation measures can be taken simultaneously with farming, and the work "simultaneously" does have meaning in the absence of the statutory construction sought by Puna. We hold that the statutory words "land used in farming" are self-defining and that an identifiable area that has not itself been farmed is not, as a matter of law, to be considered as farmed simply because some other portion of a unit in which the land lies has been farmed. Again we

think the problem is one of fact. There may be cases in which the nature and use of adjoining lands will have a substantial bearing upon the determination of the purpose for which improvements were made, but in this case it is clear that Puna needed more sugar cane to satisfy the capacity of an improved mill and that the basic effort was to bring previously uncultivated land into production and not to conserve the soil and water on previously farmed land.

We have read the cases cited by Puna [8] and they are not contrary to the position taken here. We think that the case of *Behring v. CIR*, 32 T.C. 1256 (1959), also relied upon by Puna, does no more than conclude as a matter of fact that the expenditures there made were made simultaneously with farming. If some of the language used in the *Behring* opinion may be thought to support Puna's unit theory, we refuse to follow it.

We think that neither the Commissioner nor the Tax Court erred in holding that Puna's expenditures were not made simultaneously with the farming of the land.

THE BEFORE USE ISSUE:

There is no evidence of any prior farming use in the work area of Field 391. The evidence of a prior use on the work area in Field 090 was given by a witness who had lived in the Puna District for 56 years and who had been employed by Puna for 38 years. He testified:

Q All right sir, when you commenced work in this field, did you find any evidence of prior cultivation—090 now, this one?

A Yes, in Field 090, when we started to work, there was trees and open areas, and some of these areas there was evidence of what I believe to be cane grow-

---

7. As soon as an area which was large enough to be economically planted was ready for planting, it was planted. Sugar cane is not a crop which matures in a given season. Rather it grows continuously and it matures over periods unrelated to seasons. In the Puna area maturity occurs in 24 to 30 months. The object is to secure a constant production for the sugar mill, and hence the planting and harvesting is more

or less continuous. In such an area planting in the increments described conformed to the need for a continuous day-by-day production.

8. *A. Duda & Sons, Inc. v. United States*, 383 F.Supp. 1303 (M.D.Fla.1974), *rev'd on other grounds*, 560 F.2d 669 (5th Cir. 1977); *Herndon v. United States*, 203 F.Supp. 536 (E.D.S.C. 1962).

ing sometime in the past because there were these furrows and lines similar to what we do today, so that lead me to believe that cane had been growing sometime in the past.

The witness had never seen standing cane in Field 090, and it was stipulated that the contemporary company records of Puna showed no cultivation prior to 1969. As to Field 151, the evidence given by the same witness was that, at the time they did the work, they found "coffee, trees, some orange trees, a few bananas and some Taro plantings." It was stipulated that the contemporary records of Puna showed no cultivation prior to 1969.

As previously indicated, the use of whatever land was farmed in Fields 090 and 151 prior to 1969 did not characterize the use of the whole of Fields 090 and 151. If we assume that the limited farming done in the work areas of Fields 090 and 151 was done by Puna or its tenants, then perhaps the money spent on the exact lands used for farming would be deductible. There is no direct evidence of that amount, and in the absence of knowing what lands were involved, the character of those lands and the acreages, no formula can be devised which would allocate to the lands actually used a proper share of the money expended. If Puna was entitled to a deduction for amounts expended on identifiable lands in the work area in Fields 090 and 151, it still could not claim the whole amount expended in those fields. Absent evidence from which some calculation could be made, Puna failed in its burden of proof.[9]

There is some claim that only 25 to 35 percent of the costs were for land clearing and that the remaining costs were of benefit to adjoining lands. We assume, without deciding, that if, in the reclamation of wild land, work is done which benefits "land used in farming," some allocation of such costs might be made. Even so, there is no evidence in this record showing what lands benefited, how they benefited, or how the costs or values of such benefits could be allocated. If there were such benefits, appellant failed to prove them.

We hold that neither the Commissioner nor the Tax Court erred in holding that the expenditures were not made for conservation purposes on lands which had been previously farmed.

The judgment is affirmed.

---

9. We review the evidence in light of the rule that the determinations of the Commissioner are presumed to be correct and that the burden of going forward with the evidence, as well as the burden of persuasion, lies on the taxpayer. *Rockwell v. CIR*, 512 F.2d 882 (9th Cir. 1975), *cert. denied*, 423 U.S. 1015, 96 S.Ct. 448, 46 L.Ed.2d 386.